## HORNER v. LOWE.

[No. 19,844. Filed May 27, 1902. Rehearing denied November 7, 1902.]

DEED.—*Acceptance.*—A grantee received a deed from the grantor, and took it to the office of the county recorder for record, when he found that certain of the lots which it had been the intention to convey had been omitted. He paid the record fee, and asked that the lots described in the deed be transferred to him for taxation, but, without having the deed recorded, returned it for correction. *Held,* that there had been an acceptance of the deed. *pp. 408, 409.*

SAME.—*Acceptance.*—*Waiver of Prior Executory Agreements.*—When a deed has been delivered and accepted, it is deemed, in the absence of fraud or such mistake as equity will relieve against, a complete relinquishment of conflicting reservations in any prior executory contract relative to the conveyance. *p. 410.*

SAME.—*Acceptance.*—*Failure of Title.*—In the absence of fraud or relievable mistake, the grantee who accepts a deed without covenants cannot successfully defend against a failure of title. *pp. 410, 411.*

VENDOR AND PURCHASER.—*Acceptance of Deed.*—*Mistake.*—*Laches.*—Where a deed is accepted as security for the payment of a note, and it is afterward learned that the deed did not include all the land intended, the grantee affirms the contract thus consummated if he does not with reasonable promptitude reconvey or offer to reconvey the real estate, and tender back the note. *p. 411.*

From Cass Circuit Court; *C. W. Watkins*, Special Judge.

Action by Cornelius M. Horner against Hugh Lowe. From a judgment for defendant, plaintiff appeals. Transferred from Appellate Court, under §1337u Burns 1901. *Reversed.*

*D. C. Justice, M. Winfield* and *E. B. Sellers*, for appellant. *William Guthrie* and *W. S. Bushnell*, for appellee.

GILLETT, J.—While this action was a part of certain other actions, by virtue of an order of consolidation, it was twice before this court on appeal. See *Turpie* v. *Lowe,* 114 Ind. 37; *Lowe* v. *Turpie,* 147 Ind. 652. On the 7th day of December, 1885, James H. Turpie and William Turpie, as partners, were indebted to both the appellant and the appellee respectively. The indebtedness of said firm to appellant amounted to $1,935. Appellant held the legal and record title to a number of lots in the town of Monon that in reality belonged to said firm, but were held by him under an oral agreement that said lots should stand as security for the repayment of said sum, and to save him harmless on account of certain other obligations of said firm on which he was surety. On the day aforesaid the parties to this suit and one of the members of said firm met, and made an oral arrangement looking to the funding of the firm's indebtedness. The firm conveyed a tract of real estate situate in Ohio to appellant for $600, and applied said amount on the indebtedness to him, thus reducing it to the sum of $1,335. It was then agreed that appellant should release the firm's indebtedness to him, and should convey said lots to appellee. Appellee agreed that he would pay said indebtedness to appellant, by discharging an indebtedness of $100 owing from appellant to appellee, and by paying the balance of said $1,335 in cash, and he also agreed that he would pay off and discharge said suretyship obligations. It was agreed on behalf of the firm that it would execute its note to appellee for the total amount of its indebtedness to appellant and appellee, and for the amount of said obligations on which appellant was surety, —said total sum being $5,891.35,—and that the lots aforesaid, when conveyed by appellant to appellee, and certain other property, should be held as security for the repayment to him of said latter amount with interest at the rate of eight per cent. per annum. In pursuance of said agreement, said firm executed a note to appellee, as it is above

stated it agreed to. Appellant canceled the indebtedness of said firm to him, and executed a quitclaim deed to appellee for certain of said town lots and an additional lot; and at the same time appellee executed to appellant a note for $1,235, which is the note in suit.

There is a dispute on the evidence as to whether certain lots were included in said oral agreement to convey, but it is not open to denial that, as stated, said deed did convey certain, at least, of the lots that the oral agreement contemplated should be conveyed by appellant to appellee for the purpose of security, as above stated, and that said deed did convey an additional lot. It was claimed by appellee, in his testimony upon the trial, that it was agreed that the title to the lots that he was to receive should be an unencumbered and fee simple title, subject only to the rights of the Turpies to redeem. When the deed was delivered to appellee, he took it to the recorder of White county for the purpose of having it recorded, and he then learned that the lots that he was to have conveyed to him were not all described in the deed. He took the deed to a member of said firm, stating that there was a misdescription in the deed, and that it was a quitclaim, instead of a warranty deed, and the latter received said deed, and promised to have it corrected. Appellee also testified that he made a like request of appellant, and that he promised to correct the deed, but this was denied by the latter. From that time there were no further negotiations between the parties; and subsequently appellant bid in certain of the lots conveyed at a sheriff's sale, based on a prior judgment, and, there being no redemption, he made title thereto. Two of the lots conveyed to appellee were unencumbered, and were of considerable value. There is no evidence that it was a part of the prior agreement that the deed that appellant was to make appellee should be a warranty deed. Appellee did not tender a reconveyance to appellant. The latter paid off the note known as the Miller note that he was surety on, as afore-

said, and the Turpies paid off the other notes that he was surety on. Appellee has not paid the note he executed to appellant, or any part thereof.

The present attitude of appellee towards the transaction is indicated by the following questions and answers that we take from his cross-examination: "Q. You took Turpies' notes for this $1,335 that night? A. I took this property for additional security. If I could get my money back, I would give it back. Q. And after the 20th of January you refused to proceed any further with it? A. I wanted my money back, I asked my money back. Q. You refused to proceed any further? A. I have refused to deed the property back until they paid me my money back. Q. Did that include the $5,891 note? A. Of course, they were to pay that."

It was held in *Lowe* v. *Turpie,* 147 Ind. 652, that appellee was not liable on his parol agreement to advance money to pay said suretyship debts, but the question remains as to his obligation to pay the debt that he directly contracted by his note to appellant.

It is claimed by appellee's counsel that the deed was not accepted by appellee, but we think that it clearly appears from the evidence that he did accept it. Although he was able to read, the deed was read to him, at least in part. He then received it into his possession, took it to the recorder at Monticello, tendered it for record, and paid the recorder the fee for recording it. It also appears that he asked to have the lots transferred to his name for the purpose of taxation. It even appears from appellee's cross-examination, relative to his refusal to deed the lots back, that he asserts title to the lots conveyed now. His objection to the deed at the time that he returned it to one of the Turpies was not to the deed, in so far as it was a vehicle of title for the conveyance of the lots that were conveyed, but his objections were based on the grounds that additional lots should have been conveyed in pursuance of the oral con-

tract, and that the deed should have contained covenants. As to the latter objection, at least, it may be said that it was his duty to have examined the deed when he received it. See *Jaeger* v. *Whitsett,* 3 Col. 105. This is not a case where there was a mistake in the entire subject-matter of the' contract, as in *Spurr* v. *Benedict,* 99 Mass. 463, and *Kyle* v. *Kavanagh,* 103 Mass. 356, 4 Am. Rep. 560.

It has been said that "Any words or acts which show an intention to receive title will be sufficient to prove acceptance." 9 Am. & Eng. Ency. Law (2d ed.), 161. This court has said that a deed is delivered if it passes under the power of the grantee, or some person for his use, with the consent of the grantor. *Dearmond* v. *Dearmond,* 10 Ind. 191; *Woodbury* v. *Fisher,* 20 Ind. 387, 83 Am. Dec. 325. Delivery is the correlative of acceptance, and a deed cannot pass under the power of the grantee until the grantor intentionally surrenders his control over it. There can be no doubt that there was a delivery by appellant. Tested by these considerations we think that the fact that there was an acceptance of the deed by the appellee is so clear that it can be affirmed as a matter of law.

When a deed has been delivered and accepted, it is deemed, in the absence of fraud or such mistake as equity will relieve against, as a complete relinquishment of conflicting reservations in any prior executory contract relative to the conveyance. *Bethell* v. *Bethell,* 92 Ind. 318; *Gibson* v. *Richart,* 83 Ind. 313; *Howes* v. *Barker,* 3 Johns. 506, 3 Am. Dec. 526; *Cronister* v. *Cronister,* 1 Watts & Serg. 442; *Jones* v. *Wood,* 16 Pa. St. 25; *Carter* v. *Beck,* 40 Ala. 599; *Bryan* v. *Swain,* 56 Cal. 616; *Slocum* v. *Bracy,* 55 Minn. 249, 56 N. W. 826, 43 Am. St. 499; *Clifton* v. *Jackson Iron Co.,* 74 Mich. 183, 41 N. W. 891, 16 Am. St. 621 and monographic note; Rawle, Covenants (4th ed.), 566.

If appellee were in a situation where he could get back of the deed, he might be able to present a defense, but, in the

absence of fraud or relievable mistake, the grantee who accepts a deed without covenants cannot successfully defend against a suit for the purchase money on the ground of failure of title. *Laughery* v. *McLean,* 14 Ind. 106; *Johnson* v. *Houghton,* 19 Ind. 359; *Church* v. *Fisher,* 40 Ind. 145; *Cartright* v. *Briggs,* 41 Ind. 184; *Stratton* v. *Kennard,* 74 Ind. 302; *Gibson* v. *Richart, supra,* and cases there cited; *Bethell* v. *Bethell, supra;* Rawle, Covenants (4th ed.), 567.

The appellee received by the conveyance, title to two wholly unencumbered lots and to two encumbered lots. These lots constituted, in appellee's hands, a valuable security. If appellee did not get what he bargained for, in that a part of the real estate that was to stand as his security was not conveyed, and because a part of the real estate that was conveyed was encumbered by the lien of a judgment, it may be that it was his right, upon tendering a reconveyance to appellant and tendering back the note that he received from the Turpies, with the attached condition that they would restore the *statu quo* of their relations to him, to have defended against the note in suit. But being possessed of the fruits of the contract as ultimately made, it became necessary for appellee to elect as to the *status* that the transaction should assume. If he would have accomplished a rescission, it was his duty so to elect with reasonable promptitude, and to return or offer to return whatever of value he had received by the contract. By an omission to pursue this course he affirmed the contract. *Gatling* v. *Newell,* 9 Ind. 572; *Shaw* v. *Barnhart,* 17 Ind. 183; *Balue* v. *Taylor,* 136 Ind. 368; *Upton* v. *Tribilcock,* 91 U. S. 45, 23 L. Ed. 203; *Pence.* v. *Langdon,* 99 U. S. 578, 25 L. Ed. 420; *Johnson* v. *Standard Mining Co.,* 148 U. S. 360, 13 Sup. Ct. 585, 37 L. Ed. 480; *Lawrence* v. *Dale,* 3 Johns. Ch. 23; *Cobb* v. *Hatfield,* 46 N. Y. 533; *Schiffer* v. *Deitz,* 83 N. Y. 300. In passing upon a somewhat similar case, the supreme

court of California said: "Although the plaintiff may have been entitled to rescind the contract, or to have it reformed, she must seek her remedy with reasonable diligence. She cannot wait for an indefinite period, and, without giving an excuse for her delay, obtain the relief she might have been entitled to upon a more prompt assertion of her right." *Barfield* v. *Price,* 40 Cal. 535, 542.

The provisions of the contract of appellant, appellee, and the Turpies were inextricably bound together, and it was not possible for appellee to restore any of the other parties to their former situation unless appellee offered to relinquish all that he received by the transaction. Instead of doing this, we find that, although more than fifteen years have elapsed, he has neglected to tender a reconveyance to appellee or to surrender the note that he holds, and that he still manifests a disposition to yield none of the advantages that accrued to him under the contract. "A contract can not, for either mistake or fraud, be rescinded in part, and affirmed in part. It must be rescinded *in toto,* or not at all." *Johnson* v. *Houghton,* 19 Ind. 359; *Citizens St. R. Co.* v. *Horton,* 18 Ind. App. 335, and cases there cited. We are not unmindful of the claim of appellee that appellant promised to correct the deed. Such promise might have operated to extend the time in which appellee might have elected to rescind, but years have passed since appellee must stand charged with notice that such promise would not be performed. Appellee's conduct amounts to an election to treat the contract as valid. It is not permissible to reëlect, and the time has long gone by when any act of his could affect the contract.

The court below erred in overruling appellant's motion for a new trial. Judgment reversed, with an instruction to the court below to grant appellant's motion for a new trial.