## THOMPSON *v.* REISING

[No. 17,083. Filed December 3, 1943. Rehearing denied January 11, 1944. Transfer denied February 10, 1944.]

*William D. Hardy*, of Evansville, for appellant.

*John E. Early*, of Evansville, for appellee.

CRUMPACKER, C. J.—In this action the appellee recovered judgment in the sum of $950 against the appellant for the breach of a contract to convey real es-

tate. The sole error assigned and relied upon for reversal is the court's action in overruling the appellant's motion for a new trial.

As the major questions presented by this appeal involve the sufficiency of the evidence to support the jury's verdict and the validity of the judgment rendered thereon, a review of the controlling facts is necessary. From the briefs of counsel and the transcript of the record we find evidence tending to prove the following statement of facts:

On May 7, 1937, the appellant, believing himself to be the owner of Lot 19 and the adjoining five feet of Lot 20 in Block 11, North Park Addition to the City of Evansville, Indiana, entered into a written contract with the appellee whereby he agreed to sell and she agreed to buy said real estate for the sum of $2500 upon a down payment of $500, and the remainder of the purchase price at the rate of $25 per month with six per cent interest on unpaid balances, payable semi-annually. The real estate described is improved by a one-story frame house of the bungalow type, the west wall of which is five inches east of the west line of Lot 19. On the west side of the house there is a basement window or coal chute and a water tap for hose connection. Without access to these conveniences there is no method of getting coal into the basement except by carrying it through the house and down the stairs, nor is water available for its many outside uses. There is a sidewalk from the street to the rear of the house along the west side thereof, running past said coal chute and water tap, and lying entirely on the east five feet of Lot 20. Prior to the execution of the contract above described, the appellee visited the property in question, accompanied by the appellant's broker, who indicated the boundary lines of the property to be sold as includ-

ing the five-foot strip off Lot 20. The appellee went into possession of all the property, so shown to her and so described in the contract of purchase, in September, 1937, and still remains in possession thereof. In October of that year she inquired as to the possibility of obtaining a mortgage exemption in reduction of the taxes she was required to pay under the terms of the contract, and was informed that she could not do so because she did not have title to the property. She thereupon explained her wish in the matter to the appellant, and asked him if he would give her a deed to the property involved and take a mortgage back for the then unpaid balance of the purchase money in order that she might obtain such exemption. The appellant replied that he would give her a deed to Lot 19 but not to the five-foot strip off Lot 20 as he was having some difficulty over that, but would straighten the matter out when he returned from Florida and would then convey the same to her. He further said that the contract must remain in full force and that the appellee should continue making payments as the terms thereof provided. This being understood, the appellant caused a warranty deed to Lot 19 to be prepared and delivered to the appellee and took her note for the then unpaid balance of the purchase money secured by a mortgage on the property conveyed. This deed contains no reference to the preliminary contract of sale and contains no stipulations, reservations, collateral agreements, or statements of any kind as to the understanding of the parties in respect to the five-foot strip off Lot 20. Upon his return to Evansville some months later the appellant refused to convey the five-foot strip in controversy, and upon the completion of payment of the purchase price as per the terms of the contract, the appellee brought this suit. As to many of the facts above out-

lined, there is sharp dispute in the evidence, but we have adopted and set out that version thereof most favorable to the appellee and to the jury's verdict.

The appellant's first contention is that the facts as above indicated show a written agreement to convey certain real estate, a part of which was conveyed to the appellee in performance of said contract. That she accepted the deed of conveyance with full knowledge that no part of Lot 20 was included therein, and that the statute of frauds prevents her recovery upon an oral agreement to convey the same to her at a later date and by separate deed. It is true that no action can be brought upon any contract for the sale of lands unless the promise, contract or agreement, is in writing, except under circumstances not pertinent to this inquiry, § 33-101, Burns' 1933, § 8363, Baldwin's 1934, and appellant's position would be unassailable if this were a suit upon an oral contract. It is apparent, however, that the paragraph of the complaint upon which the case was tried is not founded upon the appellant's oral agreement to convey the land in question after his return from Florida, but upon his original written contract which is specifically pleaded and a copy thereof attached to the complaint and made a part thereof. This, we assume, would not have been done had the appellee sought to rely on the oral agreement, and any reference thereto in the complaint is merely in explanation of her acceptance of a deed conveying less than all the land for which she contracted. The action being on a written contract signed by the appellant, it is not barred by the statute of frauds.

But the appellant urges if the action is on the written contract, it being prior to the acceptance of a deed

conveying less land than called for by said contract, the deed became the final repository of the terms of the contract between the parties, and no action will lie on the contract. This contention is based on the rule of merger which may be stated broadly as follows: In the absence of fraud or mistake, all prior or contemporaneous negotiations or executory agreements, written or oral, leading up to the execution of a deed are merged therein by the grantee's acceptance of the conveyance in performance thereof. *Chapman* v. *Long* (1858), 10 Ind. 465; *Turner* v. *Cool* (1864), 23 Ind. 56; *Coleman* v. *Hart* (1865), 25 Ind. 256; *Phillbrock* v. *Emswiler* (1884), 92 Ind. 590; *Carr* v. *Hays* (1887), 110 Ind. 408, 11 N. E. 25; *Smith* v. *McClain* (1896), 146 Ind. 77, 45 N. E. 41; *Horner* v. *Lowe* (1902), 159 Ind. 406, 64 N. E. 218; *Wayne International Bldg. & L. Assn.* v. *Beckner* (1922), 191 Ind. 664, 134 N. E. 273; *Williams* v. *Frybarger* (1894), 9 Ind. App. 558, 37 N. E. 302; *Beasley* v. *Phillips* (1898), 20 Ind. App. 182, 50 N. E. 488; *Doty* v. *Sandusky Portland Cement Co.* (1910), 46 Ind. App. 440, 91 N. E. 569; *Essex* v. *Hopkins* (1912), 50 Ind. App. 316, 98 N. E. 307; *Burk* v. *Brown* (1915), 58 Ind. App. 410, 108 N. E. 252; *Murray* v. *Murray* (1916), 62 Ind. App. 132, 112 N. E. 835; *Black* v. *Smith* (1927), 86 Ind. App. 621, 158 N. E. 916.

The above decisions for the most part are concerned with reservations or stipulations in a contract for a deed dealing with things or rights that would legally pass to the grantee by deed in the absence of such reservations or stipulations, and hold, in line with the weight of authority elsewhere, that such rights, if not carried forward into the deed, are extinguished thereby, and no action lies on the contract. As examples thereof, we mention reservations of growing crops, of easements

over the land conveyed, of possession by the grantor for a limited period after title passes, and stipulations that the grantee shall assume and agree to pay a mortgage or current taxes. To none of these things would the grantor retain any rights unless so expressed by the terms of the deed even though it was so stipulated in a previous executory contract between the parties. The same principle applies in the case of inconsistent reservations, for example, if the preliminary contract reserves a fifty foot easement over the land to be conveyed and the deed provides for only twenty-five feet for such purpose, the deed controls.

If, however, the contract for the sale of land creates rights collateral to and independent of the conveyance, the contract to that extent survives a deed that is silent in respect thereto. This is on the theory that the conveyance is not necessarily a performance of such collateral and independent agreements, as for example, a provision in the contract that the seller within a fixed time shall repair the house on the premises to be conveyed. *Doty* v. *Sandusky etc., Cement Co., supra.* The point is made in many decisions on the subject that collateral undertakings, not a part of the main purpose of the transaction, *i. e.*, the conveyance of real estate, by their very nature show an intent that they should not be merged in the deed, and therefore are not extinguished thereby. *Lambert* v. *Krum* (1923), 200 N. Y. S. 452; *Brennan* v. *Schellhamer* (1891), 13 N. Y. S. 558; *Brunswick Const. Co.* v. *Burden* (1906), 101 N. Y. S. 716.

The case at bar, however, falls within no one of the classes above mentioned, and with which the courts of this State have dealt frequently and at length. We have here a situation in which less land was actually conveyed than called for in the preliminary articles of

sale. We have been referred to no case in Indiana, nor have we found one, directly in point. In *Horner* v. *Lowe, supra,* there was a deficiency in the number of lots described in a deed executed in performance of a preliminary contract, but the question there involved was whether there had been actual delivery and acceptance of the deed in question. The court concluded there had been such acceptance, and applied the rule of merger. Here there is no question of the delivery and acceptance of the deed, but the case turns upon whether or not such delivery and acceptance was in performance of the contract or for a purpose extraneous and collateral thereto. Although disputed there is evidence tending to prove that after a partial performance of the contract, the appellee sought the complete performance thereof through the delivery of a deed with the unpaid balance of the purchase money secured by her mortgage back. She asked this for the purpose of reducing taxes under the mortgage exemption provisions of the statute. The appellant, however, was willing to deliver a deed to a part only of the land involved, and not even that except with the understanding that the contract should remain in full force and effect, and installment payments of the purchase money made in accordance therewith. To this the appellee agreed, and subsequently completed payment as provided by the terms of said contract.

We are convinced by the current of authority that the merger rule has no application to such a state of facts. The deed was neither offered to the appellee nor accepted by her as a performance of the contract, but for a purpose entirely foreign thereto. In *Murray* v. *Murray, supra,* this court said, "the true test of merger is the intention of the parties, either expressed or implied. If the intention has not been ex-

pressed it will be sought for and ascertained in all the circumstances of the transaction." If the intention is plainly expressed in the very terms of the deed, the deed will be decisive. If not so expressed, the question is open to other evidence. *Chase et al.* v. *Van Meter* (1894), 140 Ind. 321, 39 N. E. 455; *Elston* v. *Castor* (1885), 101 Ind. 426; *Haggerty* v. *Byrne* (1881), 75 Ind. 499; *Hanlon* v. *Doherty* (1887), 109 Ind. 37, 9 N. E. 782; *McClain* v. *Sullivan* (1882), 85 Ind. 174; *Thomas* v. *Simmons* (1885), 103 Ind. 538, 2 N. E. 203, 3 N. E. 381.

The appellant next complains that the assessment of damages is erroneous, being too large. We find nothing in the evidence even remotely indicating that the jury was prompted by any improper consideration or motive in arriving at the amount of its verdict. There is ample evidence to support it in that regard, and if it is excessive it is because of improper instructions as to the measure of damages or the introduction of improper evidence thereof. Neither of these questions can be considered under an assignment challenging the assessment of damages. In this connection appellant calls our attention to that principle of law which provides that when a deed has been made, accepted, and possession taken under it, want of title will not enable the purchaser to recover more than nominal damages, on the seller's covenants, while he, the purchaser, retains the deed and possession thereof, and has been subjected to no special damages on account of the defect in title. *Hacker* v. *Blake* (1861), 17 Ind. 97; *Reed* v. *Hamilton* (1862), 18 Ind. 476; *Mahoney* v. *Robbins* (1874), 49 Ind. 146; *Mason* v. *Cooksey* (1875), 51 Ind. 519; *Sebrell* v. *Hughes et al.* (1880), 72 Ind. 186; *Gibson* v. *Richart et al., Administrators* (1882), 83 Ind.

313; *Grubbs* v. *Barber* (1885), 102 Ind. 131, 1 N. E. 636; *Mauzy* v. *Flint* (1908), 42 Ind. App. 386, 83 N. E. 757.

These cases are readily distinguishable from the one in hand in that the appellee herein did not go into possession of the land in controversy under the deed, as that instrument made no pretense of conveying it to her, and this suit is not brought for a breach of the deed's warranty of title. In this case, the appellant contracted to convey land he did not own or to which he had no color of title, and the appellee's possession thereof under such contract constitutes a trespass, and continues only upon the sufferance of the true owner. Such suffrance cannot shield the appellant from liability for more than nominal damages for a failure to do that which he agreed to do, and for the plain breach of a contract upon which the appellee relied in good faith.

This brings us to a consideration of the propriety of the following instruction given to the jury at the request of the appellee:

"If your verdict is for the plaintiff, then it is your duty to assess her damages and you are hereby instructed that the measure of her damages is the value of the land to her which the defendant agreed to convey but failed to convey. In determining the value of said land you may consider the difference between the purchase price and the value of the land actually conveyed without that which the defendant failed to convey. You may also consider the location of the land which the defendant failed to convey, the depreciation in the value of the property conveyed without the land which the defendant failed to convey and the resulting inconvenience in the use of the land actually conveyed."

The appellant's objections to this instruction are: (1) That it fixes the measure of damages as the value of the land involved to the appellee and not its fair cash market value at the time it should have been conveyed under the terms of the contract, and (2) that it includes the element of depreciation to the land actually conveyed occasioned by failure to convey all. An examination of the authorities in Indiana on this subject leads us to the conclusion that when land is sold for a gross consideration, and there are no peculiar circumstances that render that portion of it not conveyed of a particular or special value to the ownership of the whole, the measure of damages is the value of the land not conveyed determined as of the time the conveyance thereof should have been made. *Phillips* v. *Reichert* (1861), 17 Ind. 120; *Dodds* v. *Toner* (1852), 3 Ind. 427; *Foster* v. *Klinger* (1931), 92 Ind. App. 700, 175 N. E. 136; *Puterbaugh, Admx.,* v. *Puterbaugh* (1893), 7 Ind. App. 280, 33 N. E. 808, 34 N. E. 611. If, however, the contract is in a gross sum for all of the land sold, not setting values on specific pieces, parts or tracts thereof, and there is a failure of title as to any such part, the damages should be determined by the relative value and importance of that part to which the title fails when taken in connection with the value of the whole. *Gordon and Another* v. *Cowger* (1837), 4 Blackf. 231; *Wiley* v. *Howard* (1860), 15 Ind. 169; *The First National Bank of Cambridge City et al.* v. *Colter* (1878), 61 Ind. 153. It is apparent that the case at bar falls in the latter category, and we see no error in the instruction under discussion.

The appellant further complains of the court's refusal to give certain instructions tendered by him and concerning themselves with the measure of damages.

In view of the rule as to the measure of damages to which we are committed and have herein expressed, such tendered instructions were clearly erroneous and were properly refused.

Judgment affirmed.

NOTE—Reported in 51 N. E. (2d) 488.