**Jerry W. WILLIAMS, and Jerry W. Williams Builder, Inc., Appellants–Defendants,**

v.

**Jeff YOUNGINER and Beth Younginer, Appellees– Plaintiffs.**

No. 87A01–0504–CV–180.

Court of Appeals of Indiana.

July 26, 2006.

Stacy K. Harris, Rudolph, Fine, Porter & Johnson, LLP, Evansville, IN, Attorney for Appellants.

J. Herbert Davis, Adam J. Farrar, Bamberger, Foreman, Oswald and Hahn, LLP, Evansville, IN, Attorneys for Appellees.

## OPINION

MATHIAS, Judge.

Jerry W. Williams ("Williams") and Jerry W. Williams Builder, Inc. ("Builder, Inc.") (collectively "Defendants") appeal from a jury verdict in Warrick Superior Court, raising the following combined and restated issue:

I.      Whether the trial court erred when it denied Defendants' motion for judgment on the evidence and motion to correct error on the issue of Williams's personal liability.

Jeff and Beth Younginer ("the Younginers") raise the following issues on cross appeal:

II.     Whether the trial court erred when it granted Defendants' motion for judgment on the evidence on the Younginers' punitive damages claim; and,

III.    Whether the trial court erred when it granted Defendants' motion for judgment on the evidence on the Younginers' breach of contract claim.

Concluding that the trial court properly denied Defendants' motions on Williams's personal liability, properly granted judgment on the evidence on the issue of punitive damages, but improperly granted judgment on the evidence on the breach of contract claim, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## Facts and Procedural History

In late 2000, Jeff Younginer accepted a job with Toyota Motor Manufacturing in southwestern Indiana. In preparation for moving their family from South Carolina, the Younginers engaged the services of an Indiana realtor. On December 16, 2000, while looking at houses in the Lake Ridge Subdivision in Newburgh with their realtor, they came upon a newly constructed home for sale at 1966 Waters Ridge Drive. While viewing the home, Jeff took a brochure listing the home's specifications, photo, and realty company information. The brochure also stated, "For more information call: Jerry Williams." Appellants' App. p. 303. The Younginers did not notice any problems with the home and did not observe any leaking, cracking, or mold on the basement walls.

Williams operated Building, Inc., a Kentucky corporation, in the business of building and marketing homes under the trade name Prestige Homes. On December 17, 2000, the Younginers made an offer to purchase the home located at 1966 Waters Ridge Drive. Williams counter-offered, and the Younginers accepted. The Younginers signed a real estate purchase agreement as "buyers" and Williams signed the document as "seller." Williams printed his name, Jerry W. Williams, above his signature. Nowhere in the document did Williams indicate that he was signing in his capacity as president of Builder, Inc. The name "Jerry W. Williams Builder, Inc." did not appear in the real estate purchase agreement. However, Williams crossed out the words "social security number" on the document and wrote in the federal tax identification number of Builder, Inc. and listed Builder, Inc.'s address and telephone number below his signature. Williams admitted at trial that he should have signed the real estate purchase agreement as president of Builder, Inc., but that it was "an oversight on [his] part." Tr. p. 70.

The sale of the home closed on February 15, 2001. The Younginers took possession and moved into the home the next day. In April 2001, the Younginers noticed water leaking on the west wall of their basement. They contacted Williams, who sent his father, Floyd Williams, to look into the prob-

lem. Floyd Williams suggested that the problem might be due to over-watering of the lawn, so the Younginers stopped watering the lawn. The water seepage continued on the west wall of the basement and later appeared on the north wall. The walls became discolored, cracked, and developed mold. Despite multiple attempts by Williams and professionals he referred to the Younginers to remedy the problems, the water problems persisted.

On December 9, 2002, the Younginers filed a complaint against Williams alleging breach of implied warranty of fitness for habitation, breach of implied warranty of workmanship, breach of contract, negligence, fraud, and constructive fraud. On March 14, 2003, they amended their complaint to add Builder, Inc. as a defendant. On July 17, 2003, the Younginers added a claim against both Williams and Builder, Inc. alleging breach of express warranty.

A jury trial commenced on January 24, 2005. After the presentation of the Younginers' evidence, the Defendants moved for judgment on the evidence on the breach of contract, negligence, fraud, and constructive fraud claims, as well as on all claims against Williams personally. The trial court granted judgment on the evidence on the negligence and fraud claims, and denied the motion on all other claims. After the Defendants presented their evidence, they again moved for judgment on the evidence on the claims against Williams personally. The trial court denied their motion.

The jury returned verdicts in favor of the Younginers and against Williams and Builder, Inc. on all claims, and found the Younginers' damages to be $62,305.77. Prior to trial, the parties agreed to bifur-

cate the issues of punitive damages and attorney's fees. On Defendants' motion, the trial court granted judgment on the evidence on the claims for punitive damages and breach of contract, but denied Defendants' motion as to the other claims. The court then entered judgment on the jury's verdict for breach of implied warranty of fitness for habitation, breach of implied warranty of workmanship, breach of express warranty, and constructive fraud against both Builder, Inc. and Williams.

On February 24, 2005, Defendants filed a motion to correct error, which the trial court denied. Defendants now appeal the denials of their motion for judgment on the evidence and motion to correct error, and the Younginers bring a cross appeal of the trial court's grant of judgment on the evidence on their claims for punitive damages and breach of contract.

### Standard of Review

The Defendants challenge both the denial of their motions for judgment on the evidence under Indiana Trial Rule 50 [1] and the denial of their motion to correct error under Indiana Trial Rule 59 on the issue of Williams's personal liability.

In reviewing a trial court's ruling on a motion for judgment on the evidence, the appellate court is to consider only the evidence and reasonable inferences most favorable to the non-moving party. *PSI Energy, Inc. v. Roberts*, 829 N.E.2d 943, 950 (Ind.2005), *reh'g granted* 834 N.E.2d 665 (citing *Clark v. Wiegand*, 617 N.E.2d 916, 918 (Ind.1993)).

Judgment on the evidence in favor of the defendant is proper when there is an absence of evidence or reasonable infer-

---

1. While Defendants frame the issue as whether the trial court improperly denied judgment notwithstanding, Indiana Trial Rule 50(E) abolished motions for judgment notwithstand-

ing a verdict. We presume they are arguing that they were entitled to judgment on the evidence under Trial Rule 50(A).

ences in favor of the plaintiff upon an issue in question. The evidence must support without conflict only one inference which is in favor of defendant. If there is any probative evidence or reasonable inference to be drawn from the evidence or if there is evidence allowing reasonable people to differ as to the result, judgment on the evidence is improper.

*Sipes v. Osmose Wood Preserving Co.,* 546 N.E.2d 1223, 1224 (Ind.1989) (quoting *Jones v. Gleim,* 468 N.E.2d 205, 206–07 (Ind.1984)).

■■■ In considering a motion to correct error based on a claim of insufficient evidence, if the trial court determines that there is a total absence of evidence supporting a necessary element of the plaintiff's case, the court should enter judgment for the defendant. *PSI,* 829 N.E.2d at 950 (citing *State v. Emry,* 753 N.E.2d 19, 21 (Ind.Ct.App.2001)). On the other hand, if there is some evidence to support the jury's verdict, the trial court must determine whether the jury's verdict is supported by sufficient evidence without weighing the evidence or judging the credibility of the witnesses. *Id.* Both rules mandate that the motion be granted when there is insufficient evidence under the law to support a verdict. *Id.* (citing *Huff v. Travelers Indem. Co.,* 266 Ind. 414, 420, 363 N.E.2d 985, 990 (1977)).

### I. Williams's Personal Liability

The Defendants argue that the trial court erred when it denied their motions on the issue of Williams's personal liability for breach of implied warranty of fitness for habitation, breach of implied warranty of workmanship, breach of express warranty, and constructive fraud.

#### A. *Implied Warranties*

■■■ First, Defendants contend that Williams fully disclosed his status as an agent of Builder, Inc. at the closing of the sale, and that he may not be held personally liable for the warranties entered into by Builder, Inc. They assert that the implied warranties for fitness of habitation and workmanship did not arise until the closing of the sale of the home, thus it is irrelevant in what capacity Williams signed the purchase agreement. The Younginers in turn contend that the implied warranties arose with the execution of the purchase agreement, which Williams signed in his personal capacity, exposing him to liability for any breach of the warranties. We agree that the warranty of habitability, as well as the warranty of workmanship, are implied-in-fact in the sales contract, that is, the purchase agreement. *See Johnson v. Scandia Assocs., Inc.,* 717 N.E.2d 24, 27 (Ind.1999) (discussing *Barnes v. Mac Brown & Co., Inc.,* 264 Ind. 227, 342 N.E.2d 619 (1976)).

■■■ Defendants also argue that even if the warranties arose with the execution of the purchase agreement, the purchase agreement was no longer in effect because it merged with the deed at the time of the closing of the sale. The doctrine of merger by deed provides that "[i]n the absence of fraud or mistake, all prior or contemporaneous negotiations or executory agreements, written or oral, leading up to the execution of a deed are merged therein by the grantee's acceptance of the conveyance in performance thereof." *Thompson v. Reising,* 114 Ind.App. 456, 462, 51 N.E.2d 488, 491 (1943). Under this doctrine, any existing contracts between the parties, "if not carried forward into the deed, are extinguished thereby, and no action lies on the contract." *Id.*

■■■ However, an exception to the doctrine of merger applies where the contract creates rights "collateral to and inde-

pendent of the conveyance." *Id.* at 463, 51 N.E.2d at 488. Generally, these are rights not having to do with title, possession, quality, or emblements of the land conveyed. *Link v. Breen,* 649 N.E.2d 126, 128 (Ind.Ct.App.1995), *trans. denied* (citing *Doty v. Sandusky, etc., Cement Co.,* 46 Ind.App. 440, 443, 91 N.E. 569, 571 (1910)). Collateral and independent rights or obligations are permitted to survive the deed because their performances are not necessary to the conveyance of the real estate; thus, there is no need to merge them into the contract. *Id.* (citing *Thompson,* 114 Ind.App. at 463, 51 N.E.2d at 488).

While no Indiana case has yet addressed this precise issue, the Younginers direct us to cases from other jurisdictions which have concluded that implied warranties of habitability and workmanship survive merger by deed. *See Park v. Sohn,* 89 Ill.2d 453, 60 Ill.Dec. 609, 433 N.E.2d 651, 655 (1982) (implied warranty in the contract of sale was that the house, when conveyed, would be reasonably suited for its intended use); *Petersen v. Hubschman Const. Co.,* 76 Ill.2d 31, 41, 27 Ill.Dec. 746, 389 N.E.2d 1154, 1158 (Ill.1979) ("The implied warranty does not arise as a result of the execution of the deed. It arises by virtue of the execution of the agreement between the vendor and the vendee."); *Gaito v. Auman,* 313 N.C. 243, 327 S.E.2d 870, 874–75 (1985) (implied warranty of workmanlike quality in the contract of sale survives the passing of the deed or the taking of possession by the initial vendee); *Bunkers v. Jacobson,* 653 N.W.2d 732, 740 (S.D.2002) ("where in the sale of a new house the vendor is also a builder of houses for sale there is an implied warranty of reasonable workmanship and habitability surviving the delivery of the deed").

■ We are convinced by the above-cited authority that the merger rule has no application to the facts before us. The deed is silent as to the implied warranties at issue, and the mere conveyance of the real estate is not necessarily a performance of them. Thus, we conclude that implied warranties, though concerning the "quality" of the improvements conveyed with the real estate, are collateral and independent rights not subject to merger.

■ Moreover, we believe that it is the better public policy for such warranties to be collateral and independent rights. Otherwise, they would serve only to warrant the habitability and workmanship during the often relatively short period between the execution of the purchase agreement and the closing of the sale.

### B. *Express Warranty*

■ Defendants also argue that the trial court erred when it denied their motion for judgment on the evidence and motion to correct error on Williams's personal liability for breach of express warranty. The express warranty at issue was contained in a "homeowners manual" that Williams prepared and provided to the Younginers at closing. Defendants argue "as the Younginers received notice of Williams's status as a representative of Builder, Inc. at closing, the only party who should be held liable for the express warranty of the home, created at the same time as Williams's disclosure of his status as an agent, is Builder, Inc." Reply Br. of Appellants at 6.

The homeowners manual was offered into evidence at trial. It mentions only "Jerry W. Williams" and "Prestige Homes," a trade name Williams used to build and sell homes. From this evidence, the jury could reasonably infer that the express warranty was made by Williams personally. Therefore, the trial court properly denied the motion for judgment on the evidence and motion to correct error.

### C. *Constructive Fraud*

Finally, Defendants argue that Williams may not be held personally liable for constructive fraud because "no independent tort was committed by Williams." Reply Br. of Appellants at 7. Defendants argue that the constructive fraud claim arises solely out of the contractual relationship between Builder, Inc. and the Younginers.[2] They further argue that because "Williams disclosed his status as an agent of Builder, Inc. at closing, he was not a party [to] a contractual relationship with the Younginers" and may not be held personally liable for "a tort that occurred because of his principal's contractual obligations." Br. of Appellant at 14.

Defendants rely exclusively on *Greg Allen Const. Co., Inc. v. Estelle*, 798 N.E.2d 171, 175 (Ind.2003), in which our supreme court held that a construction firm's president was not individually liable for negligent work performed on a house because "a party to a contract or its agent may be liable in tort to the other party for damages from negligence that would be actionable if there were no contract, but not otherwise."

However, in *Greg Allen*, as in most cases, the agent signed the contract in his representative capacity, which Williams failed to do. As discussed above, from the evidence presented, the jury could reasonably infer that Williams personally contracted with the Younginers and committed constructive fraud when he failed to disclose the basement's leaky condition to them. Therefore, we cannot say as a matter of law that there was insufficient evidence to support the Younginers' claims against Williams personally. Accordingly, the trial court did not err when

it denied Defendants' motion for judgment on the evidence on these claims. Likewise, the trial court did not err in denying Defendants' motion to correct error.

### II. Punitive Damages

On cross appeal, the Younginers argue that the trial court erred when it did not submit the issue of punitive damages to the jury. Specifically, they contend that because "the jury found that the Younginers proved by at least a preponderance of the evidence that [Defendants] had committed acts constituting constructive fraud ... [i]t follows that there was enough evidence to allow the jury to determine the issue of punitive damages." Br. of Cross Appellants at 40.

"Whether a party may recover punitive damages is usually a question of fact for the fact finder to decide; but it may be decided as a matter of law." *Reed v. Cent. Soya Co., Inc.*, 621 N.E.2d 1069, 1076 (Ind.1993) (internal citation omitted), *modified on reh'g* at 644 N.E.2d 84 (Ind. 1994). Furthermore, proof that a tort was committed does not necessarily establish the right to punitive damages. *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 520 (Ind.1993). Punitive damages may be awarded only if there is clear and convincing evidence that defendant "acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing." *Id.*

At the conclusion of the four-day trial, the trial court did "not believe that the evidence is adequate or close to being adequate to prove by clear and convincing evidence the elements and the evidence

---

**2.** A claim of constructive fraud may be based upon the positive affirmations made by a seller to a potential purchaser when no other relationship exists between the parties. *Plohg v. NN Investors Life Ins. Co.*, 583 N.E.2d 1233, 1236, (Ind.Ct.App.1992), *trans. denied.*

that the [Younginers] would have to prove to justify an award of punitive damages in this matter," and entered judgment on the evidence as to punitive damages. Tr. p. 608.

In their arguments, the Younginers attempt to equate constructive fraud with the conduct required to support a claim for punitive damages. However, they direct us to no evidence indicating that the Defendants acted with "malice, fraud, gross negligence, or oppressiveness." *Erie Ins. Co.*, 622 N.E.2d at 520. Therefore, we conclude that the trial court did not err when it removed the question of punitive damages from the jury's consideration. See *Plohg v. NN Investors Life Ins. Co., Inc.*, 583 N.E.2d 1233, 1236 (Ind.Ct.App. 1992), *trans. denied.*

### III. Breach of Contract

Finally, the Younginers contend that the trial court erred when it granted judgment on the evidence on their breach of contract claim. The trial court set aside the jury's verdict because "the contract itself did, in fact, merge into ... the grantor's deed[.]" Tr. p. 612. As explained above, the implied warranties under the purchase agreement were collateral to and independent of the conveyance. Thus, the implied warranties of the purchase agreement survived the deed, and the jury could reasonably infer from the evidence presented that the terms of the purchase agreement were breached. Therefore, the trial court erred when it granted judgment on the evidence on the breach of contract claim.

The purchase agreement also provided "[i]n the event either party initiates any action against the other party and/or any broker involved in this transaction, the prevailing party and/or broker shall be entitled to recover all reasonable attorney's fees and costs incurred in pursuit and/or their defense of said claims." Ap-

pellants' App. p. 185. As such, we remand for consideration of attorney's fees.

### Conclusion

The trial court properly denied judgment on the evidence on the issue of Williams's personal liability. The court properly granted judgment on the evidence on the issue of punitive damages. However, the trial court erred when it granted judgment on the evidence on the breach of contract claim. Therefore, we affirm in part, reverse in part, and remand for consideration of attorney's fees.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

ROBB, J., and VAIDIK, J., concur.