SPINDLER ET AL. *v.* VALPARAISO LODGE OF BENEVOLENT AND PROTECTIVE ORDER OF ELKS, NO. 500, ET AL.

[No. 28,071. Filed March 15, 1945. Rehearing denied April 10, 1945.]

*George W. Douglas*, of Valparaiso, for appellants.

*Edward J. Ryan* and *Ray A. Pillard*, both of Valparaiso, for appellee.

RICHMAN, J.—Appeal from a decree ordering appellants to convey real estate to first named appellee, hereinafter called "Elks," sole plaintiff below, the other parties being defendants. Relief was prayed but none granted, except for costs, against the second appellee, hereinafter referred to as "Valpo." Louis Spindler was made a party to answer to her interest as the wife of Cecil J. Spindler described herein as appellant. The controlling question is properly raised by assignment in the motion for new trial that the decision is contrary to law. The material facts are undisputed.

Elks in 1936 owned a three story building on which there was a mortgage securing outstanding bonds. Financial difficulty caused it to utilize section 77-B of the bankruptcy law for reorganization. The plan contemplated incorporation of Valpo, whose shares were to be held by the bondholders, and transfer of title to it with a lease for the second floor and part of the third to Elks on a form prepared by it and submitted with its plan. After the plan of reorganization became effective such a lease was executed but not recorded. The term thereof was three years beginning January 1, 1937. There was no provision for renewal. The monthly rent for the first four months was $50, for the next eight $75 and thereafter $100.

The third and fourth clauses were as follows:

"Third: The real estate demised shall not be sold by the Landlord for a period of one (1) year beginning January 1st, 1937, and in the event of any proposed sale thereafter, the tenant shall immediately be advised in writing of the price and terms of sale, and it shall have the right and privilege within ninety (90) days after the receipt of such notice of purchasing the real estate in and on which the demised premises are located at the same price and upon the same terms as offered by any prospective purchaser or purchasers and in the event of the failure of the Tenant to purchase said real estate and a sale thereof to others is consummated as above provided, then the Tenant shall have ninety (90) days notice of the consummation of any such sale before being called upon to relinquish possession of the demised premises.

"Fourth: The Tenant may at its option terminate this lease at the expiration of the first year thereof, or at any time thereafter upon ninety (90) days notice in writing to the Landlord."

In May, 1939, a new lease was executed by Valpo to Elks for a term of five years beginning January 1, 1940,

with option of renewal for an additional term of five years, but not containing either clause above quoted nor any reference thereto nor similar provisions. The monthly rental for 1940 and 1941 was $100, for the next three years $125 and for the optional term $150. The option was exercised in 1944 before March 18.

January 11, 1944, Elks made a written proposal to Valpo to purchase the building for $40,000 which was rejected. Later appellant made an offer of $50,000. While it was being considered Elks submitted another written offer of $55,000 to which answer was made by Valpo's letter dated March 15, 1944, from which we quote:

"It is the desire of the Board of Directors to effect a, sale of the building promptly. We are returning to you the bid which was submitted yesterday and the certified check for $1000. We will be glad to consider your bid for the property, but to be given the proper consideration your bid should be accompanied by a certified check for not less than 20% of the amount of your bid, and the bid should be written in such a manner that, if accepted, your check will be retained as earnest money, and if the purchase is not consummated because of your failure to pay the balance, the earnest money will be retained by us as liquidated damages.

"We will expect to receive your bid by 3:00 o'clock P. M. of next Saturday, March 18, and your bid should be your best offer for the property."

Before noon on the day designated Elks submitted its third written proposal again offering to pay $55,000 and tendering a check for 20% thereof as requested. That afternoon appellant's bid for $56,000, plus taxes then a lien, was accepted and conveyance made to him. Elks was promptly informed of the sale by letter with which its check was returned. During these negotiations appellant talked with various members of Elks, includ-

ing the highest officer, who inquired if a further extension of the second lease would be given if appellant acquired the property. March 16, 1944, he wrote Elks that at a monthly rental of $200 it might have "an additional five year option which would extend your lease until January 1, 1955, should you see fit not to make any bid for the property and should I become the owner . . ." In no letter or conversation did Elks or any of its representatives mention the provisions of the old lease. Not until after appellant's purchase was consummated were the contentions made upon which it now relies.

These are, in substance, that the third clause of the first lease gave Elks what it calls an "option" to meet the price offered by any other prospective purchaser, that this "option" was supported by the consideration of surrender of its property to Valpo without foreclosure proceedings, that the "option" was an independent agreement indeterminate in time surviving the lease in which it was contained and enforceable against appellant who, because of Elks' possession of the real estate, must be charged with notice of all its rights which could have been ascertained by inquiry. The trial court adopted this view ordering conveyance to Elks upon its payment to appellants of the price at which they acquired the property.

The third clause must be read as a whole and in conjunction with the fourth. Their evident purpose was to give the tenant a year's undisturbed possession but thereafter during the term to permit the landlord to sell the property, free from the lease, either to a third person or preferably to the tenant if the latter would meet the former's price, the right so given being reciprocal to that given the tenant to terminate upon 90 days notice. The parties were contracting for a specific

term, no longer than three years, and, nothing to the contrary appearing in the lease, must be deemed to have had that term in mind as to all of its provisions.

When the lease expired by its own limitations at noon on the first day of January, 1940, the new lease theretofore executed became effective. It was not at all like the former lease. It contained no provision for termination, even for breach of condition. Both parties were firmly bound for a five year term and, at the option of the tenant, for an additional term. While there was no interruption in possession there was a new tenancy and the old ceased to exist.

It has been held in *Hedderich* v. *Smith* (1885), 103 Ind. 203, 2 N.E. 315, that a right to remove a building and fixtures, conceded to have existed during the term of a tenancy, did not survive the execution of a new lease. The court said:

"The acceptance of the new lease was an effectual surrender of the old, together with the estate and all other rights which the old lease secured to him. Thenceforth he was in as of a new estate, which is to be measured by the condition of things existing when it commenced, and by the covenants, conditions and reservations contained in the new lease, from which the rights of the parties must be determined and regulated."

This principal, we think, is applicable to the present case. If the tenant had desired a renewal of the preferential right it would have been a simple matter to insert in the new lease appropriate provisions. This the tenant failed to require. The reason for the failure may exist in the fact that under the new lease Elks acquired the right to obtain a 10 year tenancy, absolute except for such default on its part as would permit reentry by the landlord under the law, and at a rental which Elks may

have thought more advantageous than the preferential right to purchase.

We are unable to follow Elks' argument that there was a separate consideration for the third clause. None is shown by the lease. The contention that surrender of title to the corporation organized by the bondholders, saving the mortgagee the expense and delay of foreclosure, was a separate consideration for insertion of the disputed provision is not sustainable. If it was consideration for one provision of the lease, it was consideration for all for it was indivisible.

Elks relies upon "the spirit and intent of the Bankruptcy law to aid its rehabilitation." That spirit has not the power to lift out of a lease one of two reciprocal clauses and to endow such clause with independent life existing four years after the expiration of the lease.

There was no relevant inference to be drawn from what is characterized by Elks as the "very odd circumstance" that the property was sold to appellant on the same day Elks' last offer was made. Negotiations had been in progress for two months. Valpo's letter expressed the desire "to effect the sale of the building promptly." Three o'clock on Saturday afternoon was fixed as the time limit for receiving Elks' "best offer." When that time expired with a higher bid from appellant, Valpo had no further duty to Elks than to return its check.

The conduct of the parties throughout the negotiations is altogether consistent with our conclusion and cannot reasonably be harmonized with Elks' present contention which evidently was an afterthought.

The decree is based upon the premise that when appellant bought the property Elks had a preferential right

of purchase. Since no such right existed the decision is contrary to law. We cannot conceive of any proper amendment of the pleadings or change in evidence upon a new trial that would warrant recovery by the plaintiff below. Accordingly the decree is reversed with instructions to the trial court to enter a decree for all defendants.

NOTE.—Reported in 59 N. E. (2d) 895.