**Dorothy M. (Brown) STONEBURNER, Appellant (Defendant),**

v.

**Thomas V. FLETCHER, Appellee (Plaintiff).**

**No. 2-577-A-207.**

Court of Appeals of Indiana, Second District.

July 21, 1980.

Edwin H. Hughes, III, Hughes & Hughes, Indianapolis, for appellant.

Marion O. Redstone, Indianapolis, for appellee.

SULLIVAN, Judge.

Dorothy M. Stoneburner[1] (Stoneburner) and Thomas V. Fletcher (Fletcher) entered into a real estate conditional sales contract dated April 17, 1969.[2] The standard form contract contained the following provisions added to and incorporated into the instrument.

"(1) Buyer shall have the privilege of paying any sums in addition to this contract and of paying the contract in full at any time after four (4) years from the date hereof.

(2) Seller is the owner of a Lot located immediately adjacent to the west of the within described real estate and agrees to give Buyers an opportunity to purchase same, in event same should be for sale at any time in the future, by paying an amount equal to the highest bona fide offer received by Seller and for which Seller is willing to sell.

(3) Buyers further agree to keep said real estate mowed."

Fletcher exercised his right under Clause (1) and paid the entire remaining balance in late November, 1974, receiving a warranty deed from Stoneburner.

In the spring of 1975, Stoneburner began negotiating with Robert and Mildred Kopecky (the Kopeckys) for the sale and purchase of a forty foot wide strip of the lot which was the subject of Clause (2) in the Stoneburner-Fletcher contract. The negotiations resulted in conveyance of the strip

---

1. At the execution of the contract, Appellant's name was Dorothy M. Brown. At the time of trial her surname was Sprague. The parties consistently refer to Appellant as Dorothy M. Stoneburner and we do likewise.

2. Vernon H. Fletcher and Ruth A. Fletcher, the parents of Thomas V. Fletcher, were also vendees under the contract, but are not parties to this case.

from Stoneburner to the Kopeckys on July 31, 1975.[3]

Fletcher brought this action for equitable relief and damages for breach of Clause (2) against Stoneburner and the Kopeckys. Prior to trial, Fletcher dismissed his complaint against the Kopeckys, who in turn dismissed their counterclaim against Fletcher. The case was tried by the court, without a jury, and judgment was entered for Fletcher in the sum of $4,000.

Stoneburner argues on appeal that:

I. Clause (2) did not survive the payment and satisfaction in full of the contract regarding Parcel C and was not in full force and effect in 1975.

II. There is insufficient evidence to support the award of damages.

III. The trial court erred in finding:

A. That Fletcher was ready, willing and able to purchase the real estate on the same terms accepted by Stoneburner.

B. That Stoneburner represented to Fletcher that she had a "bona fide" offer for the real estate.

C. That Stoneburner denied that she had any "deal" for the real estate in order to deceive Fletcher and deny him his rights.

We affirm.

### I.

■ Stoneburner argues that Finding of Fact 10 that the duration of the pre-emptive right[4] in Clause (2) must be construed to be for a reasonable period of time and to expire no sooner than the normal payout of the real estate contract is not supported by the evidence and, therefore, is clearly erroneous.[5]

Stoneburner contended at trial that Clause (2) was an indivisible and interdependent covenant of the conditional sales contract which, therefore, terminated with

---

**3.** At the time of the Stoneburner-Fletcher contract, the real estate affected appeared as follows:

| STONEBURNER | STONEBURNER WITH SPECIAL PROVISION #2 TO FLETCHER | FLETCHER CONDITIONAL SALES CONTRACT |
|---|---|---|
| PARCEL A. | PARCEL B. | PARCEL C. |

After the Stoneburner-Kopecky conveyance:

| STONEBURNER | 45' STONEBURNER | 40' KOPECKY | FLETCHER |
|---|---|---|---|
| PARCEL A. | PARCEL B. | PARCEL B. | PARCEL C. |

**4.** The parties and the trial court labeled Clause (2) alternatively as an option or an option of first refusal. We feel Clause (2) is more properly labeled a pre-emptive right. As stated in VI American Law of Property § 26.64, p. 507 (1952):

"A pre-emption differs materially from an option. An option creates in the optionee a power to compel the owner of property to sell it at a stipulated price whether or not he be willing to part with ownership. A pre-emption does not give to the pre-emptioner the power to compel an unwilling owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the pre-emption, at the stipulated price. Upon receiving such an offer, the pre-emptioner may elect whether he will buy. If he decides not to buy, then the owner of the property may sell to anyone."

To the same effect is *Mercer v. Lemmens* (1964) 230 Cal.App.2d 167, 40 Cal.Rptr. 803.

**5.** We question whether the trial court's determination of this issue is properly denominated as a finding of fact. Generally, the construction of a written contract is a question of law for the trial court, not a question of fact. *Kleen Leen, Inc. v. Mylcraine* (1st Dist. 1977) Ind. App., 369 N.E.2d 638; *Ebert v. Grain Dealers Mut. Ins. Co.* (3d Dist. 1973) 158 Ind.App. 379, 303 N.E.2d 693; *Renn v. Davidson's Southport Lumber Co.* (2d Dist. 1973) 157 Ind.App. 446, 300 N.E.2d 682. The trial court construed the language used ("at any time in the future") regarding the duration of the pre-emptive right to be for a reasonable period of time. This construction was a conclusion of law. The determination that a reasonable period of time would expire no sooner than the normal payout of the real estate sales contract was a mixed finding of fact and conclusion of law.

the contract for the sale of Parcel C in November, 1974. Fletcher testified that his interpretation of the provision was that his right lasted as long as Stoneburner lived. The trial court declined to adopt either of these positions and instead construed the duration of the pre-emptive right to be until September 1, 1982, the date at which the real estate conditional sales contract would have been paid in full if Fletcher had not taken advantage of his pre-payment right and accelerated payments.

Our research, however, discloses that a pre-emptive right appears to continue for the life of the vendor unless a longer or shorter duration is specified. *See Mercer v. Lemmens, supra,* VI American Law of Property, *supra.* While the trial court's determination of a lesser duration may not be correct, we cannot say it is prejudicially unreasonable as to Stoneburner. The dispositive question, in our view, is whether the pre-emptive right expired by virtue of the transfer of Parcel C from Stoneburner to Fletcher by warranty deed. If it did, we need go no further. If it did *not,* the pre-emptive right continued and 1975 was well within both the reasonable time and Stoneburner's life measure of its duration.

Stoneburner analogizes the instant case to *Spindler v. Valparaiso Lodge of Benevolent and Protective Order of Elks, No. 500* (1945) 223 Ind. 276, 59 N.E.2d 895. In that case, our Supreme Court held that the tenant's acceptance of a new lease, effective at the termination of a prior lease, was a surrender of the old lease and all rights the tenant had under the prior lease. Therefore, the tenant could not enforce a preferential right to purchase the leased property contained in the prior lease when the new lease contained no such provision.

We do not find the analogy convincing. The prior lease in *Spindler* concerned one parcel of land and contained a pre-emptive right to purchase same. The instant case presents a contract to purchase one parcel of land containing a pre-emptive right to purchase an adjoining, but separate parcel of real estate. The subject matter of the leases and the pre-emptive right were the same in *Spindler,* while here the subject matter of the contract to purchase and of the pre-emptive right are different. Further the court in *Spindler* stated:

> "The acceptance of the new lease was an effectual surrender of the old, together with the estate and all other rights which the old lease secured to him. Thenceforth he was in as of a new estate, which is to be measured by the condition of things existing when it commenced, and by the covenants, conditions and reservations contained in the new lease, from which the rights of the parties must be determined and regulated."

*Id.,* 223 Ind. at 281, 59 N.E.2d at 897 [citing *Hedderich v. Smith* (1885) 103 Ind. 203, 205–06, 2 N.E. 315, 316.]. This language, which Stoneburner paraphrases in order to make it fit the particulars of the instant case, is language of novation, not of merger by deed or severability of contract.[6]

The doctrine or rule of merger by deed was summarized in *Thompson v. Reising* (1943) 114 Ind.App. 456, 462, 51 N.E.2d 488, 491:

> "In the absence of fraud or mistake, all prior or contemporaneous negotiations or executory agreements, written or oral, leading up to the execution of a deed are merged therein by the grantee's acceptance of the conveyance in performance thereof." (Citations omitted.)

The court surveyed several earlier cases in the area and stated that they:

**6.** Stoneburner informs us that "The general rule is that termination of a lease or a conditional sales contract containing an option to purchase also terminates the option in those cases where the lease or the conditional sales contract are construable as entire and indivisible and the option and other provisions of the lease or contract are interdependent." (Appellant's Brief, p. 40.) Other than *Spindler,* Stone-burner cites no authority for this general rule. Since, however, the real estate conditional sales contract here terminated with the delivery and acceptance of the warranty deed, and appellant refers to an entire and indivisible contract, we believe Stoneburner is referring to the doctrines of merger by deed and severability of contracts. We might add that there is abundant Indiana authority in these areas.

"for the most part are concerned with reservations or stipulations in a contract for a deed dealing with things or rights that would legally pass to the grantee by deed in the absence of such reservations or stipulations, and hold, in line with the weight of authority elsewhere, that such rights, if not carried forward into the deed, are extinguished thereby, and no action lies on the contract." *Id.*

The court continued:

"If, however, the contract for the sale of land creates rights collateral to and independent of the conveyance, the contract to that extent survives a deed that is silent in respect thereto. This is on the theory that the conveyance is not necessarily a performance of such collateral and independent agreements, as for example, a provision in the contract that the seller within a fixed time shall repair the house on the premises to be conveyed. *Doty v. Sandusky etc., Cement Co.,* [46 Ind.App. 440, 91 N.E. 569] *supra.* The point is made in many decisions on the subject that collateral undertakings, not a part of the main purpose of the transaction, i. e., the conveyance of real estate, by their very nature show an intent that they should not be merged in the deed, and therefore are not extinguished thereby. *Lambert v. Krum* (1923), [121 Misc. 170] 200 N.Y.S. 452; *Brennan v. Schellhamer* (1891), Com.Pl., 13 N.Y.S. 558; *Brunswick Const. Co. v. Burden* (1906), [116 A.D. 468] 101 N.Y.S. 716." *Id.* at 463, 51 N.E.2d at 491.

*See also, Dubois County Machine Co. v. Blessinger* (1971) 149 Ind.App. 594, 274 N.E.2d 279; *Stack v. Commercial Towel & Uniform Service, Inc.* (1950) 120 Ind.App. 483, 91 N.E.2d 790.

The pre-emptive right to purchase the adjoining lot was not a part of the main purpose of the contract which was the sale and purchase of Parcel C. Further, the use of the open-ended words "at any time in the future" could be reasonably interpreted as an expression of the parties' intent, at the time of contracting, that the pre-emptive right would survive the conveyance of the principal property.

Stoneburner attacks the sufficiency of the description of the property affected by the pre-emptive right and argues that this insufficiency of description, along with the absence of a separate recital of consideration and execution by the parties, further shows that Clause (2) was so interdependent with the real estate conditional sales contract that it terminated when the contract was fulfilled.

■ A contract is not entire and indivisible simply because it is embraced in one instrument and executed by the same parties. *Armstrong v. Illinois Bankers Life Association* (1940) 217 Ind. 601, 29 N.E.2d 415, *modified on other grounds,* 29 N.E.2d 953. Our Supreme Court stated in *Samper v. Indiana Department of State Revenue* (1952) 231 Ind. 26, 37, 106 N.E.2d 797, 802:

"The usual test of the severability of a contract is the entirety or divisibility of the consideration; and whether a contract is entire or divisible is controlled by the intention of the parties as it is disclosed by the terms of the contract. It is well established that the parties to a contract intend that it be entire and indivisible when by its terms, nature and purposes it contemplates and intends that each and all of its parts, material provisions and the consideration, are common each to the other and interdependent, or whether it could be completed in part only. *Thompson v. Fesler* (1919), (Transfer denied 1920), 74 Ind.App. 80, 90, 91, 123 N.E. 188; *Traiman v. Rappaport* (1930), 41 F.2d 336, 71 A.L.R. 475, 479; 17 C.J.S., Contracts § 331, p. 786, 787; 12 Am.Jur., Contracts, § 317, p. 873."

While the instant contract would not appear to meet the divisibility of the consideration test, it could be completed in part only. Fletcher could have satisfied the conditional sales contract and have received a deed from Stoneburner, completing that part of the agreement, but Stoneburner might never have decided to sell the adjoining property during her lifetime, thus never triggering his pre-emptive right. Alternatively, Stoneburner might have sold the

Parcel B to a third party during the period Fletcher was paying on the contract, without notifying Fletcher. Such a breach of the pre-emptive right would not have terminated Stoneburner's contractual rights regarding Parcel C.

The description of the property affected by the pre-emptive right is not so insufficient as to render the contract entire and indivisible. In *Mercer v. Lemmens, supra,* the court held that "the adjoining 50 foot lot to the within described property" on the escrow instructions was sufficient description. Here the property was similarly, if not more definitely, described as Stoneburner's "Lot located immediately adjacent to the west of the within described real estate." The record fails to show any confusion between the parties as to what property was the subject of the pre-emptive right or that Stoneburner owned any other property matching that description. The fact that the pre-emptive right makes reference to a preceding part of the instrument does not in and of itself render the pre-emptive right indivisible from the real estate conditional sales contract.

We hold that the trial court did not err in concluding that the pre-emptive right survived the tender and delivery of a deed to Parcel C and that the pre-emptive right was in full force and effect in 1975.

## II.

Stoneburner attacks the judgment of the trial court awarding $4,000 damages to Fletcher as being contrary to law, contending that it is not supported by the evidence and clearly constitutes a judgment based upon speculation, conjecture and guesswork.

A fundamental rule of damages is that a party injured by a breach of contract is limited in his recovery to the loss actually suffered. *Ogle v. Wright* (1st Dist. 1977) Ind.App., 360 N.E.2d 240; *Irving v. Ort* (1958) 128 Ind.App. 225, 146 N.E.2d 107. An award of damages may not be based on mere conjecture, speculation or guesswork. *Daly v. Nau* (3d Dist. 1975) 167 Ind.App.

541, 339 N.E.2d 71. However, an appellate court, in judging the award of damages, does not require any particular degree of mathematical certainty; where there is doubt as to the exact proof of damages, such uncertainty must be resolved against the wrongdoer. *Friendship Farm Camps, Inc. v. Parson* (1st Dist. 1977) Ind.App., 359 N.E.2d 280; *Gene B. Glick Co. v. Marion Construction Corp.* (1st Dist. 1975) 165 Ind. App. 72, 331 N.E.2d 26.

The trial court found the following facts: "22. On July 31, 1975, Defendant Sprague delivered a General Warranty Deed for the "Strip" to a Robert R. and Mildred Kopecky and received the $4,000 consideration from the Kopeckys.

23. That the fair market value of the entire tract, prior to the sale, was in excess of Eight Thousand Dollars.

24. That the fair market value of the remainder, to the Plaintiff, is negligible.

25. That a stone driveway has been constructed on said "strip" immediately adjacent to Plaintiff's Lot.

26. That Plaintiff's Lot and improvements, on the 85 ft. frontage lot were of a reasonable value of $32,500.00 at the time of construction.

27. That the value of the improvements would be more than proportionately higher if located on a lot with 125 ft. frontage.

28. That Plaintiff has been damaged by the loss of the unique partial [sic] of real estate sold by Defendant."

A review of the record discloses abundant evidence to support Findings 22, 25 and 26. The finding as to the fair market value of Parcel B is supported by the $4,000 price paid for less than half of the lot by the Kopeckys and Stoneburner's testimony that the unsold portion was even more valuable due to trees and improvements. We find no direct statement by Fletcher that the remaining portion of the lot had negligible fair market value to him, but we believe the trial court was reasonable in inferring such fact since it would have been separated from his house and lot by the forty foot wide strip sold to the Kopeckys and con-

tained Stoneburner's garage and outdoor fireplace. While the additional forty feet of frontage may have, in reality, added proportionally more than $4,000 value to Fletcher's house, we find no evidence in the record that will support such a finding.

We are unable, however, to conclude that this erroneous finding was the sole factual basis for the damages awarded. The trial court had earlier found that Stoneburner had informed Fletcher that she had a bona fide offer for Lot B in the amount of $12,-500 and that such statement was false, no such offer having ever been made. If the fair market value of the entire lot is subtracted from the bogus bona fide offer reported by Stoneburner, a reasonably sound factual basis for the award can be found.

Stoneburner argues that the general measure of damages for a vendor's failure or refusal to convey land is usually based on the difference between the contract price and the market value of the land at the time of the breach plus the return of any payment made, with interest, commonly referred to as loss of the bargain, citing Anno: 11 A.L.R.3d 719.

■ In the instant case, the contract price was the market price or the price at which Stoneburner was willing to sell and a third party was willing to buy. The customary measure of damages, then, is inapplicable. This does not, however, lead to the conclusion that Fletcher has not been damaged. What had once been a valuable contractual right was now virtually worthless. Any measure of damages must be flexible enough to vary with the necessities of the situation. *Jerry Alderman Ford Sales, Inc. v. Bailey* (2d Dist. 1972) 154 Ind.App. 632, 291 N.E.2d 92.

■ We hold that the award of $4,000 damages is a fair amount to compensate Fletcher for the loss of a valued contractual right. It does not constitute a judgment based on speculation, conjecture and guesswork. It is supported by the evidence and is not contrary to law.

III.

■ Stoneburner argues that several Findings of Fact are not supported by the evidence and are clearly erroneous.

(A.) "18. That Plaintiff was ready, willing and able to purchase the real estate on the same terms accepted by Defendant."

The record discloses the following exchange between Fletcher and his attorney during direct examination.

"Q. Would you and do you, are you still willing to pay the same price as the Kopeckys paid for that forty foot strip?

A. Yes, Sir."

The evidence is clearly sufficient and the finding of fact is not clearly erroneous.

(B.) "19. On June 19, 1975, and again on June 27, 1975, Defendant Sprague, by her attorney, informed Plaintiff that she had a bona fide offer for Lot B in the amount of $12,500. 20. That such statement was false. That no such bona fide offer was ever made."

The letters did not contain the words "bona fide offer," however, the June 19 letter did state:

"Pursuant to your recent phone conversation please be advised I discussed about the proposal sale of the lot immediately west of your home by Mrs. Dorothy Brown.

"She has indicated the proposed sale price is $12,500 cash.

"If you desire to purchase such lot upon the same terms, will you please submit a written proposition to Mrs. Brown or to me on or before Thursday, June 25, 1975. Otherwise Mrs. Brown will proceed with the sale of the lot to the present proposed purchaser."

The use of phrases such as "proposed sale price," "same terms" and "present proposed purchaser" clearly implies that Stoneburner was informing Fletcher that she had received a bona fide offer from a third party at which she was willing to sell, especially since these were the conditions that would trigger Fletcher's pre-emptive right. Stone-

burner admitted that she did not have a bona fide offer of $12,500 for the lot.

The evidence is clearly sufficient and the findings of fact are not clearly erroneous.

> (C.) "21. That the Defendant denied to Plaintiff that any 'deal' had been made for said real estate, when in fact Defendant had already executed her acceptance of the Kopecky offer. That such statements and the acts of Defendant were done to deceive the Plaintiff and to deny him his rights under the agreement of April 17, 1969."

Stoneburner argues that her response to Fletcher's question in early May 1975 as to whether she was selling the property was that she had not yet made a "firm deal." She argues that her agreement with the Kopeckys was contingent upon obtaining a zoning variance. Therefore, she was being entirely truthful and was not attempting to deceive Fletcher.

The record discloses that the Kopecky-Stoneburner agreement was executed April 20, 1975. The "no firm deal" statement was made in a telephone conversation shortly thereafter. The letters to Fletcher, previously referred to, were written in the latter part of June. Stoneburner admitted that she was attempting to sell half of the lot and all of the lot at the same time, with the expectation that Fletcher would not accept her offer.

Any contingency in the Stoneburner-Kopecky agreement was beyond Stoneburner's control. It depended upon the action of an independent third party, the zoning authorities. As far as she was concerned the property had been sold to the Kopeckys. The record discloses a course of conduct designed to hide the truth from Fletcher and to deprive him of his pre-emptive right. The evidence is sufficient and the finding of fact is not clearly erroneous.

The judgment is affirmed.

MILLER, J. (sitting by designation), and SHIELDS, J., concur.