**Jill BAIRD, Appellant–Defendant,**

v.

**ASA COLLECTIONS, Appellee–Plaintiff.**

No. 15A01–0902–CV–00083.

Court of Appeals of Indiana.

July 15, 2009.

Rehearing Denied Oct. 7, 2009.

Jeffrey C. Rocker, Columbus, IN, Attorney for Appellant.

## OPINION

BAKER, Chief Judge.

Appellant-defendant Jill Baird appeals the trial court's judgment in favor of appellee-plaintiff ASA Collections (ASA) on its claim against her for delinquent dues

and assessments on lots that she had purchased at a tax sale. Specifically, Baird argues that the judgment must be set aside because the trial court's findings of fact and conclusions of law did not address the Indiana Nonprofit Corporation Act's [1] (Nonprofit Corporation Act) provisions regarding a homeowner association member's personal liability for the nonpayment of dues and assessments. Baird also claims that the evidence did not support the judgment—including the award for attorney's fees and costs—and that the trial court "was ambiguous in its ruling as to the application of the Fair Debt Collection Practices Act (FDCPA)" with regard to ASA's claim and her counterclaims. Appellant's Br. p. 7. Moreover, Baird contends that the trial court lacked jurisdiction over the case because Decatur County was the proper venue under the FDCPA.[2] Finally, Baird claims that she is entitled to damages, attorney's fees, and costs on her counterclaim that she advanced against ASA in accordance with the provisions of the FDCPA.

We conclude that Baird has waived her claim with respect to the application of the Nonprofit Corporation Act and find that ASA's action against her was not subject to the FDCPA. Thus, venue in Dearborn County was proper, and Baird is not entitled to recover on her counterclaims. However, we also find that the trial court's judgment award entered against Baird in the amount of $4,795.63 is erroneous. Therefore, we affirm in part, reverse in part, and remand with instructions that the trial court recalculate the amount of dues, assessments, and attorney's fees and costs to which ASA may be entitled.

### FACTS

On October 23, 1996, Baird, a resident of Decatur County, purchased six lots in Dearborn County at a tax sale. Baird and her boyfriend, Tony Goodrich, have purchased a number of lots over the years for investment purposes. Baird received certificates of the sales, and the Dearborn County auditor subsequently issued tax deeds, transferring lots 2171 and 2172 in the Hidden Valley Lake Development (HVL) to Baird on February 18, 1998. The deeds were signed and attested before the Dearborn County clerk that same day.

HVL is a not-for-profit corporation under Indiana law, and its bylaws indicate that it is bound by the provisions of the Nonprofit Corporation Act. This statute essentially limits the ability of a nonprofit corporation, in some instances, to hold members personally liable for dues, assessments, or association fees.

The original HVL plat contained various restrictions, conditions, covenants, and agreements (Covenants), which included the creation of the HVL Property Owner's Association (Association). The monies that are collected by HVL are used to maintain the community areas, including the streets, lakes, pools, and baseball diamonds.

Each landowner in the development becomes a member of the Association and is subject to annual dues in the amount of $60 plus fees and assessments that are imposed by the Association. When the lot owner accepts the deed of conveyance, he or she agrees to pay those charges. The Covenants further state that "each and every successive owner and/or owners shall from the time of acquiring covenant and agree, as aforesaid, to pay [the Association], its successors and assigns, all charges past and/or future." Appellant's App. p. 375. Finally, Article I, Section

---

**1.** Ind.Code § 23–17–7–7.

**2.** 15 U.S.C. § 1692 et seq.

4(a) of HVL's bylaws state that "membership shall terminate if member shall cease to own at least one lot." *Id.*

At some point, Baird stopped paying the dues and assessments on the properties. Thus, HVL placed liens on Baird's lots on October 7, 2004. HVL asserted that Baird was indebted to it in the amount of $1,408.70 for the nonpayment of "dues, assessments, fees, and charges." Pl.Ex. B. On December 14, 2004, Baird sold lots 2171 and 2172 to Richard Wirking and conveyed the property to him by quitclaim deed. However, those deeds were not recorded. Baird also sold her remaining lots to other individuals, and those deeds were executed, delivered to the purchasers, and recorded.

At some point, HVL personnel learned that Baird no longer owned any lots in HVL. However, on May 17, 2005, representatives from HVL sent a letter to Baird, stating that "since a deed transferring the lots to a new owner have [sic] not been filed to date, the property is still legally in your name and you are responsible for the ... past dues." Appellant's App. p. 270.

On June 3, 2005, ASA sent another letter to Baird demanding payment in the amount of $3,218.67, "which included collection fees." *Id.* at 172. ASA's ledger sheet showed that Baird allegedly owed a total of $1,892 in dues and assessments to HVL, finance charges, and late fees that had accrued from January 1, 2003, to December 2, 2004.

A contingency fee arrangement existed between ASA and HVL regarding the costs of collection and attorney's fees. In response to ASA's demand for payment, Baird sent a letter to ASA on June 13, 2005, challenging the validity of the debt. Baird also requested that ASA cease communicating with her in accordance with FDCPA provisions. However, on June 15, 2005, ASA again contacted Baird and demanded payment. In the ledger referred to above, ASA indicated that its collection fees amounted to $742.77 as of June 3, 2005.

On September 2, 2005, Baird received a letter from Lane Siekman, an attorney and the owner of ASA, indicating that the matter had been referred to him for collection. Siekman demanded payment on the account and stated that Baird owed $3,950.31. This amount included dues, fees, and costs that had accrued after Baird had sold the lots. On February 27, 2006, ASA sent Baird another letter requesting payment and increasing the total amount owed to $4,725.63, in light of additional accrued fees and costs.

On March 10, 2006, ASA filed an action against Baird in the Dearborn County Superior Court, Small Claims Division, seeking $4,795.63 in unpaid property owners' dues plus interest and $750 in attorney fees. ASA's claim was based upon Baird's previous ownership of the two lots in the HVL residential community. Attached to ASA's claim was the tax deed issued on February 18, 1998, showing that Baird had purchased Lot 2171 at the October 23, 1996, tax sale. Also attached was an "Assignment of Receivable," which indicated that HVL had transferred a "statement of account" to ASA on December 29, 2005. Appellant's App. p. 307.

Thereafter, Baird filed a motion to dismiss ASA's claim, alleging improper venue. Following a hearing, the trial court denied Baird's motion to dismiss. Baird brought an interlocutory appeal and this court affirmed the denial of the motion to dismiss. *Baird v. ASA Collections,* No. 15A01–0611–CV–521, 870 N.E.2d 1091 (Ind.Ct. App. July 31, 2007).

Baird filed her answer to the complaint and lodged a counterclaim against ASA,

alleging that ASA's claim was a frivolous and malicious institution of civil proceedings against her that violated the FDCPA. As a result, Baird sought damages and attorney's fees.

The cause was transferred to the plenary docket, and a trial commenced on April 7, 2008. During the trial, ASA offered into evidence a copy of the Covenants and its ledger sheet, which reflected the charges that Baird allegedly owed to ASA and HVL. The charges set forth in the ledger stemmed from the actions of the board of directors of the Association and/or from HVL's bylaws. In addition to Association dues, the ledger indicated that Baird owed $1,160.53 in "Collection Fee[s]." *Id.* at 173.

The undisputed evidence also showed that Baird had transferred lots 2171 and 2172 to Richard Wirking via quitclaim deed on December 14, 2004. Those deeds were admitted into evidence and Bruce Keller, the Community Manager of HVL, testified that the manner in which to terminate an Association member's obligation was for the owner to transfer his or her lot to another. Keller also testified that he was aware that Baird had informed HVL personnel that she had sold the lots. Furthermore, Mark Scott—ASA's executive director—testified that he knew of the sale when Baird disputed the debt.

Baird testified regarding the attorney's fees that she had incurred in defending against ASA's collection efforts and in asserting her rights under the FDCPA on her counterclaim. Following the presentation of the evidence, the trial court took the matter under advisement and issued the following findings of fact and conclusions of law on January 14, 2009:

1. That on February 18, 1998, the Defendant, Jill Baird, did purchase two (2) lots on tax sale from the Auditor of Dearborn County, Indiana, in the Hidden Valley Lake Land Development for investment purposes. The lots were numbered 2171 and 2172.

2. That each landowner in the development by deed covenants is a member of the [Association] and is subject to annual dues and fees. Each lot owner by acceptance of the deed of conveyance agrees to pay said dues, fees, and assessments under the original plat conditions.

3. That since the time of the tax sale, Baird has failed to pay the [Association] dues and assessments due and owing beginning on December 29, 2005, and that [the Association] assigned a claim for the same in the amount of $4,795.53 to the Plaintiff, ASA for collection.

4. That the Defendant has failed to pay her installments dues and assessments due and owing and continues to fail to pay said dues and assessments.

5. That the primary complaint by Defendant, Jill Baird, was that venue was improper under the Fair Debt Collections Practices Act. The Appellate [Court] found insufficient proof as to the applicability of this Act and let the judgment of the trial court stand on proper venue.

6. This Court is also unconvinced that FDCPA is implicated and even if applicable Defendant has proven no damages.

7. The underlying debt in this case is valid and subject to collection either by Hidden Valley or by ASA Collections.

8. Although ASA did make one additional contact with Jill Baird after being asked to cease, this Court does not see that rising to the level of a violation of FDCPA for a bonified [sic] mistake or error.

9. No attorney fees are awarded to either party.

10. Defendant's counter-claim is found to be without merit and shall take nothing by their [sic] claim.

11. Plaintiff's claim of $4,795.63 is valid plus court costs.

Appellant's App. p. 8–9. Baird now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

At the outset, we note that ASA has not submitted an appellee's brief. As a result:

[W]e do not undertake the burden of developing arguments for the appellee. Applying a less stringent standard of review with respect to showings of reversible error, we may reverse the lower court if the appellant can establish prima facie error. Prima facie is defined in this context as "at first sight, on first appearance, or on the face of it." The purpose of this rule is not to benefit the appellant. Rather, it is intended to relieve this court of the burden of controverting the arguments advanced for reversal where that burden rests with the appellee. Where an appellant is unable to meet that burden, we will affirm.

*State Farm Ins. v. Freeman,* 847 N.E.2d 1047, 1048 (Ind.Ct.App.2006) (internal citations omitted).

■ We next note that when a trial court has entered findings of fact and conclusions of law pursuant to a party's request, we engage in the following two-tiered standard of review:

We must first determine whether the evidence supports the findings of fact and then whether the findings support the judgment. We will not reverse the trial court's findings and judgment unless they are clearly erroneous. Findings of fact are clearly erroneous when the record lacks any facts or reasonable inferences from the evidence to support them. The judgment is clearly erroneous when it is unsupported by the findings of fact and conclusions entered on the findings. In making these determinations, we will neither reweigh the evidence nor judge witness credibility, considering only the evidence favorable to the judgment and all reasonable inferences therefrom.

While we defer substantially to findings of fact, we do not do so for conclusions of law. We apply a de novo standard of review to conclusions of law and owe no deference to the trial court's determination of such questions.

*Mueller v. Karns,* 873 N.E.2d 652, 657 (Ind.Ct.App.2007).

■ The clearly erroneous standard is based upon whether the party is appealing a negative judgment or an adverse judgment. *Fowler v. Perry,* 830 N.E.2d 97, 102 (Ind.Ct.App.2005). Where the party who had the burden of proof at trial appeals, he appeals from a negative judgment and will prevail only if he establishes that the judgment is contrary to law. hi A judgment is contrary to law when the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to only one conclusion, but the trial court reached a different conclusion. *Id.*

### II. Baird's Contentions

#### A. Application of the Nonprofit Corporation Act

■ Baird first contends that the judgment entered in ASA's favor must be set aside because the trial court failed to acknowledge the applicability of the Nonprofit Corporation Act. More specifically, Baird argues that the trial court's findings should have addressed the Act's limiting effect on a nonprofit corporation's ability

to enforce personal liability against its members.

Baird did not raise the alleged applicability of the Nonprofit Corporation Act in her affirmative defenses, in a counterclaim, or at trial. Baird's counsel referenced the statute during final argument and commented that the Board of Directors "may ... kick a person out, [but] they can't ask you to pay it." Tr. p. 144.

■ Generally, a party may not present an argument or issue to an appellate court unless the party raised that argument or issue to the trial court. *GKC Ind. Theatres, Inc. v. Elk Retail Investors, LLC,* 764 N.E.2d 647, 651 (Ind.Ct.App.2002). This rule exists in part to protect the integrity of the trial court because it cannot be found to have erred as to an issue or argument that it never had an opportunity to consider. *Id.* Because Baird did not adequately raise the issue of the Nonprofit Corporation Act's applicability at the trial court level, the issue is waived, and Baird cannot successfully claim that the trial court erred in failing to address those provisions.

Even if Baird had preserved the issue for appellate review, we discuss Baird's ongoing liability with regard to future dues and fees assessed by the Association below. As a result of our disposition regarding ASA's ability to collect against Baird for dues and assessments that the Association may have imposed after Baird sold the property, we find that any omission of a discussion of the Nonprofit Corporation Act in the trial court's findings does not warrant reversal of the judgment.

### B. FDCPA Applicability

■ Baird next challenges the adequacy of the trial court's findings regarding the applicability of the FDCPA. Baird claims that the "FDCPA governs the actions of ASA in this matter and ... the facts es-

tablished at trial clearly support only one conclusion, that ASA violated the provisions of that Act." Appellant's Br. p. 7. As a result, Baird claims that the trial court's finding that it was "unconvinced that [the] FDCPA is implicated," appellant's app. p. 9, is erroneous.

The FDCPA, which is codified at 15 U.S.C. section 1692 et seq., is one of the most important federal consumer protection statutes. We note that "consumer debt," as defined by the FDCPA, is

any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are *primarily for personal, family, or household purposes,* whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5) (emphasis added).

As noted above, the basis of ASA's claim involves Baird's liability for allegedly delinquent homeowner's dues and assessments on the lots that Baird had purchased at the tax sale. No evidence was presented that Baird expressed her intent to use the lots for "personal, family, or household purposes" pursuant to the FDCPA provisions. To the contrary, Baird testified that the lots in question were unbuildable and were sold to purchasers who desired a lot for access to the recreational facilities at HVL. Moreover, the evidence established that Baird and Goodrich bought the lots for investment purposes, and Goodrich's real estate investments have served as his primary source of income through the years.

At least one court has determined that delinquent condominium dues and assessments constitute "consumer debts" under the FDCPA because fees that are used to improve or maintain commonly areas qualify as personal, family, or household uses and they confer a direct benefit on the

residents. *Newman v. Boehm, Pearlstein & Bright, Ltd.*, 119 F.3d 477, 480–82 (7th Cir.1997). The *Newman* court reasoned that simply because several households use the common areas or benefit from them, the primary nature of the service is not diminished:

> To the extent that the assessments were to be used to improve or maintain commonly-owned areas, that purpose, too, qualifies as "personal, family, or household." In our view, when a special assessment is used to repair a common roof, or a monthly assessment is used to pay for services like snow removal from a common walkway or landscaping of a common yard, the assessments are for a household purpose even if more than a single household benefit.

*Id.* at 481.

As noted above, the owner in *Newman* was occupying a condominium. However, the evidence here demonstrated that Baird purchased vacant lots, never built on them, and did not reside in any structure in the HVL. Rather, Baird purchased the lots in 1996 and sold them to various owners in 2004 when the land was developed. Thus, the evidence demonstrated that Baird may be characterized as an investor rather than a consumer in the transaction, and she has failed to show that the dues and fees that were assessed involved a "consumer debt" within the meaning of the FDCPA. Therefore, we cannot say that the trial court erroneously determined that the FDCPA was not implicated in this case.

### B.  Venue

Baird also argues that the trial court's judgment must be set aside because the case was tried in an improper venue. Specifically, Baird argues that Dearborn County was not the preferred venue because ASA's action was not an attempt to enforce an interest in real property. As a result, Baird maintains that

pursuant to the FDCPA, the case should have been heard in Decatur County.

Inasmuch as we have already determined that the FDCPA does not apply in this case, we turn to Indiana Small Claims Rule 12, which provides that venue in a small claims action is proper if it lies in the county "where the transaction or occurrence actually took place or where the obligation was incurred or is to be performed." Because the undisputed evidence establishes that the debt involves Baird's alleged delinquent property owners' dues for real estate located in Dearborn County, it is apparent that venue was proper in that county.

Additionally, this court has found that pursuant to Trial Rule 75(A)(2), the "preferred venue" lies in the county where the land is located if there is a claim for injuries to the land or if there is a claim that relates to the land. *Diesel Const. Co. v. Cotten*, 634 N.E.2d 1351, 1353 (Ind.Ct.App. 1994). We further noted that the examples listed in the rule reflect that claims may be related to the land and not necessarily be for injuries to the land. *Id.* Hence, the trial court correctly concluded this case was properly venued in Dearborn County, and Baird's argument fails.

### C.  Remaining Contentions and Baird's Counterclaims

Baird argues that the remainder of the trial court's findings of fact and conclusions of law, including ASA's attempt to claim attorney's fees, its false representation that attorney Liekman was an independent counsel, and its failure to enter findings on her claims that ASA had violated various provisions of the FDCPA, were erroneous.

Again, because we have determined that the debt Baird owed to ASA was not subject to the FDCPA, most of Baird's contentions are without merit. In essence,

Baird is requesting us to reweigh the evidence and judge the credibility of the witnesses, which we will not do.

However, we note that findings three, four, and nine and are not supported by the evidence:

3. [S]ince the time of the tax sale, Baird has failed to pay HVLPOA dues and assessments due and owing beginning on December 29, 2005, and that HVLPOA assigned a claim for the same in the amount of $4,795.63 to the Plaintiff, ASA for collection.

4. That the Defendant has failed to pay her installments dues and assessments due and owing and continues to fail to pay said dues and assessments.

. . .

9. No attorney fees are awarded.

Appellant's App. p. 8.

■ As discussed above, Bruce Keller, the Association's property manager, testified at trial that Baird had paid the dues and assessments that accrued on the property for several years, but had not paid any fees since 2003. Tr. p. 7–8. Keller also acknowledged that the rights and duties of membership in the Association are based upon the ongoing ownership of property. *Id.* at 20, 22–23. Baird testified that she had paid the assessments and dues on the two lots until she sold them, and HVL's records indeed reflect timely, periodic payments. Appellant's App. p. 91–92, 173.

Even more compelling, as we have previously stated, the Covenants that were introduced into evidence provided that

upon conveyance of any part of the land described herein the purchaser thereof and each and every successive owner and/or owners shall from the time of acquiring covenant and agree . . . to pay, to [the Association], its successors

and assigns, all charges past and/or future as provided in, and in strict accordance with the terms and provisions hereof.

Appellant's App. p. 165. Moreover, HVL's bylaws state that "the membership . . . shall terminate if the . . . member shall cease to own at least one lot in Hidden Valley Lake subdivision." *Id.* at 264.

As noted above, Baird purchased the lots at the tax sale on October 23, 1996, and transferred them to a subsequent purchaser on December 14, 2004, as evidenced by the quitclaim deeds that were admitted into evidence. *Id.* at 292–93. And, although the subsequent purchaser had not recorded the deeds, Baird no longer owned the properties. Thus, we must conclude that Baird has presented a prima facie case that the trial court erred in determining that Baird is liable for the total amount that ASA claims is due and owing because she "has failed to pay the [Association] dues and assessments due and owing beginning on December 29, 2005." Appellant's App. p. 8–9.

With regard to the trial court's statement in finding nine that it did not award attorney's fees to ASA, Baird points out that Keller and Scott testified at trial that the costs of collection and attorney's fees were part of the amount that ASA sought from Baird. Appellant's App. p. 36–37, 52, 56–58. And, because the evidence demonstrated that HVL compensates ASA on a contingency fee basis and ASA never billed HVL for attorney's fees, Baird asserts that the judgment award must be set aside on this basis.

Notwithstanding Baird's contention, the Covenants permit HVL to recover its costs and attorney's fees in its collection of dues and assessments:

Any costs including attorney fees incurred by the [Association], in the collec-

tion of the aforesaid dues and/or assessments shall be borne and paid by the lot owner causing the same. It is understood and agreed that such unpaid dues assessments and costs of collection including attorneys fees shall constitute a lien encumbrance on or against said lot, tract or parcel of lands which lien shall enjoy a priority with other liens as established by the dates of creation of their respective encumbrances and as may be provided for by law.

Appellant's App. p. 165.

In our view, it is irrelevant that the evidence may have established that ASA received no payment of attorney's fees from HVL prior to trial, or that ASA is compensated via a contingent fee agreement between HVL and ASA. The Covenants dictate that HVL may recover its costs and attorney's fees in collecting dues and fees, and it is entitled to be made whole in its attempt to recover those amounts. Therefore, Baird has failed to show that the judgment must be set aside on this basis.

In sum, we find that the judgment awarded to ASA in the amount of $4,795.63 cannot stand in light of our conclusion that findings three and four were not supported by the evidence. As a result, we must remand this case with instructions that the trial court recalculate the amount of delinquent dues, fees, and assessments that Baird owes from the time of her purchase of the lots at the tax sale until the date on which she conveyed the lots to Wirking, the subsequent purchaser. Moreover, the trial court is instructed to recalculate the amount of ASA's attorney's fees and costs associated with the collection of those fees and enter judgment accordingly.[3]

The judgment is affirmed in part, reversed in part, and remanded with instructions.

MAY, J., and BARNES, J., concur.

---

3. As an aside, we note that HVL is not without a remedy for the unpaid dues, fees, and assessments on the property, even though we have determined that Baird is not liable for amounts accrued after she sold the property. HVL, as the original creditor, may nonetheless foreclose its liens on the property for the unpaid dues and assessments and may elect to proceed against the subsequent owner for the unpaid dues and assessments. As discussed above, HVL had placed liens on Baird's lots in October 2004. Pl.Ex. B.