**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**G. JAYSON MARKSBERRY**
Marksberry Law Office
Danville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

MICHAEL A. RILEY,                    )
                                     )
    Appellant-Plaintiff,         )
                                     )
        vs.                      )    No.  32A01-1310-PL-453
                                     )
OSCAR AND LINDA SANDLIN,             )
                                     )
    Appellees-Defendants.        )

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable David H. Coleman, Judge
Cause No. 32D02-1003-PL-13

June 10, 2014

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-plaintiff Michael Riley and his then wife, Deborah (collectively, the Rileys), were in the process of moving. Deborah knew the appellees-defendants Oscar and Linda Sandlin (collectively, the Sandlins) because Deborah's father, Robert Kean, had been life-long friends with Oscar. However, Oscar had never met Michael. As a favor to the Rileys, the Sandlins allowed them to store some items of personal property including a trailer and a compressor in their pole barn in 2005, provided it would be only temporary.

The Rileys subsequently divorced, and Michael did not request the return of the property until 2009. However, Linda informed Deborah on several occasions that they wanted the property removed. Michael never spoke with the Sandlins until 2009, even after Deborah informed him numerous times that they wanted the property removed. Deborah finally told the Sandlins to keep the property.

Although Michael told Deborah and the Sandlins that he did not want the property, he eventually demanded that the Sandlins return the property. Michael's attorney wrote the Sandlins a letter in 2009 requesting the same, and eventually filed suit against the Sandlins for conversion seeking treble damages and attorney fees.

We agree with the trial court and conclude that Michael did not prove the elements of conversion. Thus, we affirm the judgment entered in the Sandlins' favor.

### FACTS

In July 2005, the Rileys and Deborah's father, Kean, traveled to Danville and delivered several items of the Rileys' property to the Sandlins. The property included,

2

among other things, some scaffolding, a utility trailer, a fiberglass extension ladder, and an air compressor. Oscar was present at the time, but he was not sure who actually owned the property. In fact, Sandlin had never met Michael before the property was delivered. However, Oscar agreed to store the items in his barn for a short time because he and Kean had been friends for nearly thirty years.

At the time, Deborah was married to Michael, and she understood that the Sandlins were doing them a favor by temporarily storing the items because there was no other place to put them. Michael told Linda that they were building a new storage facility on their property when they changed residences, and that he would remove the property as soon as the structure was built.

From 2005 until 2009, Oscar had no contact with Michael. In 2008, the Rileys commenced dissolution of marriage proceedings. Michael made no effort to retrieve the items. On the other hand, Linda testified that she spoke with Michael on several occasions between 2005 and 2009, requesting that he remove the items from their property because the items were creating a nuisance. Notwithstanding these requests, Michael made a number of excuses for not removing the property. In fact, Michael ultimately told Linda to "just keep [it]," and stated that he "[did not] want this stuff." Appellant's App. p. 5.

Michael admitted that he made no effort to remove the property for over four years and has still refused to take possession of the property. It was not until June 2009, that Michael sent the Sandlins a letter via certified mail demanding the return of the property.

3

The evidence also demonstrated that Deborah had been at the Sandlins on at least one prior occasion in 2009 and retrieved some of the property. She offered to give the remaining items to the Sandlins to show appreciation for keeping the property for nearly four years. Oscar eventually obtained a license plate from the Indiana Department of Motor Vehicles for the trailer after Deborah told him to keep the items. At that point, Oscar did not know that the Rileys had divorced and was not aware of any property settlement agreement that pertained to the parties' nonremoval or transfer of property. Thereafter, Michael again wrote the Sandlins a certified letter on November 21, 2009, demanding the return of the property.

On November 7, 2012, Michael filed an amended complaint for conversion against the Sandlins.[1] Michael alleged that the property was valued at $6500, that he had made a written demand for the return of his property, and claimed that the Sandlins had improperly converted his property to their own use. Thus, Michael claimed that he was entitled to the value of the property, treble damages, and reasonable attorney fees.

Before the action commenced, and after correspondence was received from Michael's counsel, Oscar repeatedly requested that Michael remove the items. After the lawsuit was filed, Michael went to the Sandlins' residence and specifically stated that he no longer wanted the items. However, Oscar repeatedly requested that Michael remove the items, but he has refused to do so.

---

[1] Riley filed his original complaint against the Sandlins on March 31, 2010. Appellant's App. p. 9.

4

Following a bench trial on August 1, 2013, the trial court concluded that Michael failed to prove the elements of conversion, in that he failed to demonstrate that the Sandlins knowingly and intentionally exerted unauthorized control over his property. In fact, the trial court concluded that the Sandlins' possession of the property was authorized. The trial court adopted the Sandlins' proposed findings of fact and conclusions of law and Michael now appeals.

## I.  Standard of Review

We initially observe that the Sandlins have not filed an appellee's brief. When an appellee fails to submit a brief, we do not develop arguments for him or her and we apply a less stringent standard of review. Laflamme v. Goodwin, 911 N.E.2d 660, 664 (Ind. Ct. App. 2009). We may reverse if the appellant establishes prima facie error, which is an error at first sight, on first appearance, or on the face of it. Id. If the appellant does not meet the burden of establishing prima facie error, we will affirm. Trinity Homes, LLC v. Fang, 848 N.E.2d 1065, 1068 (Ind. 2006).

We also note that where, as here, the trial court issues findings of fact and conclusions of law pursuant to a party's request, we apply a two-tiered standard of review. Baird v. ASA Collections, 910 N.E.2d 780, 785 (Ind. Ct. App. 2009). We first determine whether the evidence supports the findings and then determine whether the findings support the judgment. Id. We review for clear error and will reverse only if the trial court's findings are unsupported by any evidence or reasonable inferences drawn from the evidence or if the judgment is unsupported by the findings and conclusions. Id.

5

With respect to the trial court's findings of fact, we defer substantially; with respect to its conclusions of law, we apply a de novo standard. Id.

Finally, we note that Michael had the burden of proof at trial and, therefore, is appealing from a negative judgment. Smith v. Dermatology Assoc. of Ft. Wayne, P.C., 977 N.E.2d 1, 4 (Ind. Ct. App. 2012). On appeal, we will not reverse a negative judgment unless it is contrary to law—that is, unless considering the evidence in the light most favorable to the appellee together with all reasonable inferences to be drawn therefrom, we find the evidence points unerringly to a conclusion different than that reached by the trial court. Id.

## II. Michael's Claims

Michael contends that the trial court erred when it did not hold the Sandlins liable for civil conversion. Thus, Michael contends that he was entitled to recover his attorney fees and treble damages from the Sandlins.

Indiana Code section 35-43-4-3 provides that a person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion, a class A misdemeanor. "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35-41-2-2 (b).

6

We also note that Indiana Code section 35-43-4-1(a) provides that to "exert control over property" means to obtain, take, carry, drive, lead away, conceal, abandon, sell, convey, encumber, or possess property, or to secure, transfer, or extend a right to property." An individual's control over property of another person is "unauthorized" if, among other things, it is exerted "(1) without the other person's consent; (2) in a manner or to an extent other than that to which the other person has consented; or . . . (6) by promising performance that the person knows will not be performed." I.C. § 35-43-4-1(b)(1), -(2), and -(6). If the State proves these elements beyond a reasonable doubt, a criminal defendant may be imprisoned for not more than one year and may be fined not more than $5,000. Ind. Code § 35-50-3-2.

In accordance with Indiana Code section 34-24-3-1, a victim of criminal conversion may bring a civil action for that act. Conversion as a tort consists either in the appropriation of the personal property of another to the party's own use and benefit, or in its destruction, or in exercising dominion over it, in exclusion and defiance of the rights or lawful possessor. Computers Unltd. v. Midwest Data Sys. Inc., 657 N.E.2d 165, 171 (Ind. Ct. App. 1995).

If the plaintiff proves the elements of criminal conversion by a preponderance of the evidence, Indiana Code section 34-24-3-1 allows him or her to recover up to three times the actual damages, the costs of the action, and reasonable attorney fees. Jamrosz v. State, 839 N.E.2d 746, 758 (Ind. Ct. App. 2005).

More specifically, Indiana Code section 34-24-3-1 provides in part that

7

If a person has an unpaid claim on a liability that is covered by IC 24-4.6-5 or suffers a pecuniary loss as a result of a violation of IC 35-43, IC 35-42-3-3, IC 35-42-3-4, or IC 35-45-9, the person may bring a civil action against the person who caused the loss for the following:

(1) An amount not to exceed three (3) times:

(A) the actual damages of the person suffering the loss, in the case of a liability that is not covered by IC 24-4.6-5. . .

(2) The costs of the action.

(3) A reasonable attorney's fee.

In this case, the trial court points out, and we agree, that for the Sandlins to be held liable for conversion, it was Michael's burden to prove that they knowingly and intentionally exerted unauthorized control over his property. N. Elec. Co. v. Torma, 819 N.E.2d 417, 429 (Ind. Ct. App. 2004). Michael also had to prove that the Sandlins were aware of a high probability that their possession was unauthorized. Midland Guardian v. United Consumers Club, Inc., 499 N.E.2d 792, 797 (Ind. Ct. App. 1986).

In this case, the evidence demonstrated that Michael specifically authorized the Sandlins to store his property in their garage when he and Deborah delivered it to their residence in 2005. Tr. p. 14, 42, 45. Michael did nothing for nearly four years to remove it, even though the Sandlins wanted him to take it back. Id. at 13, 106. Additionally, at some point, Michael told Deborah either after the divorce or during the pendency of the dissolution proceedings that removing the property was low on his "priority list." Id. at 106.

8

As noted above, the Sandlins agreed to store the property for a "short time" for them as a favor because Kean and Oscar had known each other for many years. Id. at 27, 32, 49, 54, 83-84, 106. Michael testified that he did not even think that the Sandlins were "doing him a favor" by storing his property. Id. at 152.

Michael remained adamant in refusing to remove the property from the Sandlins' storage barn even after Deborah informed him that the Sandlins wanted the items removed from their residence. Id. at 26, 35-37, 67. Michael admitted that he made "no efforts" to remove the property. Id. at 117.

The evidence further demonstrated that Linda called several times and asked Deborah about removing the property. Id. at 102. Oscar had also requested Michael to remove the items. Id. at 98. Although Deborah attempted to remove the items herself, she was not able to physically do so, except for a canoe and a ladder. Id. at 41, 69. Finally, Deborah told Linda to "just take [the property]." Thus, Deborah "signed over the trailer." Id. at 108, 164.

At some point after Deborah told the Sandlins to keep the items, including the trailer, Oscar obtained a plate for it and he used it one time. Id. at 39-40. Oscar had tried to contact Michael several times to retrieve the property, but Michael never returned his calls. Id. at 71. Oscar testified that he even tried to return the trailer to Michael after he had it plated, but Michael still refused to take it back. Id. at 73, 76, 78. Moreover, Oscar offered to sell the trailer and give the proceeds to Deborah, but she refused because of the length of time that the Sandlins had stored the items for them. Id. at 60, 70, 89.

9

Neither of the Sandlins were aware of any provisions of the dissolution property agreement that purportedly prevented any of the items from being transferred or sold. Id. at 53, 68, 79, 87, 104. Indeed, the only information that Oscar had heard from Linda was that the Rileys were divorcing. Id. at 68. Oscar did not know that Michael—rather than Deborah—was the apparent owner of the property. Id. at 63, 88.

On one occasion, Michael went to the Sandlins' residence, where he demanded that they pay his attorney fees because he wanted to be "compensated." Id. at 109. However, Michael repeated that he did not want any of the property, including the trailer because he "didn't care about that stuff" and wanted them "to get rid of all that stuff." Id. Deborah also stopped taking Michael's telephone calls after she already "signed over [the trailer]." Id. at 110. In short, it is apparent that Michael had chosen to abandon the property that he had specifically authorized the Sandlins to store for him.

In light of the evidence that was presented at trial, it is apparent that Michael failed to prove that the Sandlins committed conversion. Therefore, the trial court properly entered judgment for the Sandlins.

The judgment of the trial court is affirmed.[2]

BARNES, J., and CRONE, J., concur.

---

[2] Although Michael asserts that the trial court erred in not considering his proposed findings of fact and conclusions of law, he has presented no evidence that he was entitled to a judgment on his claim for conversion in light of the evidence that was presented at trial. And even assuming that the trial court did not consider Michael's proposed findings, those findings amount to requests to reweigh the evidence and judge the credibility of witnesses, which we will not do. In re D.D. v. Marion Cnty. Office of Family & Children, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004). Finally, while Michael maintains that this case must be reversed because the trial court adopted the Sandlins' proposed findings, it is not uncommon or improper for the trial court to adopt verbatim reproductions of submissions by the prevailing party. Clark v. Crowe, 778 N.E.2d 835, 841 n.3 (Ind. Ct. App. 2002).