

FILED
Dec 30 2016, 7:33 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| A. David Hutson | Mark Wynn |
| Hutson Legal | Jenner, Pattison, Sutter & Wynn, |
| Jeffersonville, Indiana | LLP |
| | Madison, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tina L. Hemingway, | December 30, 2016 |
| *Appellant-Petitioner/Counter-Respondent,* | Court of Appeals Case No. 39A04-1604-PL-957 |
| | Interlocutory Appeal from the Jefferson Circuit Court |
| v. | The Honorable Darrell M. Auxier, Judge |
| John P. Scott, | Trial Court Cause No. 39C01-1509-PL-698 |
| *Appellee-Respondent/Counter-Petitioner* | |

**Crone, Judge.**

# Case Summary

[1]   John Scott conveyed his property to himself and his girlfriend Tina

Hemingway. Earlier that day, Hemingway had signed a contract agreeing that

if she cheated on Scott or failed to contribute to the property's maintenance and

expenses, she would reconvey her interest in the property to him. Hemingway later filed a real property partition action against Scott, who filed a counterclaim for breach of contract and replevin. The trial court found Hemingway to be in breach of contract and ordered that she execute a quitclaim deed conveying to Scott all her rights, title, and interest in the property. Hemingway seeks review of the trial court's interlocutory order, arguing that the deed extinguished the contract pursuant to the doctrine of merger and that the contract was unenforceable as against public policy. Finding that the doctrine of merger does not apply and that the contract is not rendered unenforceable for public policy reasons, we affirm.

## Facts and Procedural History

[2] In 2001, Scott inherited a ten-acre parcel of land ("the Property") from his father. In 2004, Hemingway and Scott began a relationship, and Hemingway moved in with Scott. The couple broke up for a time, and Hemingway moved out. On February 17, 2012, the couple executed a handwritten contract, penned by Hemingway and signed by both, pursuant to which Scott promised to convey the Property from himself to himself and Hemingway. The contract included a list of conditions that would constitute a breach, including "cheating" by either party. Appellant's App. at 35. The contract also required both parties to contribute to the care and upkeep of the Property, including the house, and the expenses attributable to it. The remedies clause stated that any breach by Hemingway would require her to reconvey her interest in the Property to Scott via quitclaim deed. According to the express language, the

contract would "be attached to the property deed pertaining to [the] property at [the listed address]." *Id*. That same day, Scott executed a deed conveying the Property to himself and Hemingway as joint tenants. The contract was neither referenced in the deed nor filed with the deed for recording purposes.

[3] Hemingway resumed living with Scott. About two months after the contract and conveyance, Hemingway was impregnated by another man. She delivered the child on January 6, 2013, and the parties agree that Scott is not the child's father. Hemingway moved out in early June 2013, after which she no longer contributed financially or otherwise to the household or Property. On June 17, 2013, Scott sent Hemingway written notice that she was in breach of the contract and must convey her interest in the Property back to him pursuant to the terms of the contract.

[4] On September 17, 2015, Hemingway filed a petition for partition of the Property. Scott filed a counterclaim for breach of contract and replevin, seeking a court-ordered conveyance of the Property back to him by quitclaim deed. On March 28, 2016, the trial court conducted a hearing on Scott's counterclaim. On April 1, 2016, the trial court issued an order with findings in favor of Scott, concluding that Hemingway breached the contract and ordering her to convey her interest in the Property back to Scott by quitclaim deed.

[5] Upon Hemingway's request, the trial court certified the order for interlocutory appeal, and we accepted jurisdiction. Additional facts will be provided as necessary.

# Discussion and Decision

[6] Hemingway challenges the trial court's interlocutory order finding her in breach of contract and ordering her to reconvey her interest in the Property to Scott. Here, the trial court issued its order with findings of fact pursuant to Indiana Trial Rule 52(A). In such cases, we review for clear error, first determining whether the evidence supports the findings and then whether the findings support the judgment. *Baird v. ASA Collections*, 910 N.E.2d 780, 785 (Ind. Ct. App. 2009), *trans. denied* (2010). We will reverse only if the trial court's findings are unsupported by any evidence or reasonable inferences drawn from the evidence or if the judgment is unsupported by the findings and conclusions. *Id*. In conducting our review, we neither reweigh evidence nor judge witness credibility; rather, we consider the evidence in the light most favorable to the judgment. *Id*. With respect to the trial court's findings of fact, we defer substantially; with respect to its conclusions of law, we apply a de novo standard. *Id*.

## Section 1 – The doctrine of merger does not extinguish the contract or its express provisions concerning acts constituting breach and effects of breach.

[7] Hemingway maintains that the contract merged into the deed and therefore was extinguished by the express terms of the deed.

> "Where two parties have made a simple contract for any purpose, and afterwards have entered into an identical engagement by deed, the simple contract is merged in the deed and becomes extinct. This extinction of a lesser in a higher

> security, like that extinction of a lesser in a greater interest in land, is called merger."

BLACK'S LAW DICTIONARY 1009 (10th ed. 2014) (emphases omitted) (quoting WILLIAM R. ANSON, PRINCIPLES OF THE LAW OF CONTRACT 85 (Arthur L. Corbin ed., 3d Am. ed. 1919)).[1]

[8] According to the doctrine of merger by deed, "[i]n the absence of fraud or mistake, all prior or contemporaneous negotiations or executory agreements, written or oral, leading up to the execution of a deed are merged therein by the grantee's acceptance of the conveyance in performance thereof." *Link v. Breen*, 649 N.E.2d 126, 128 (Ind. Ct. App. 1995) (citing *Thompson v. Reising*, 114 Ind. App. 456, 462, 51 N.E.2d 488, 491 (1943)), *trans. denied*. Collateral and independent rights or obligations are allowed to survive the deed because their performance is not necessary to the conveyance of the real estate and, as such, there is no need to merge them. *Id*. The test of merger is the express or implied intention of the parties. *Id*. To ascertain the parties' intent, words and phrases of the contract cannot be read in isolation but must be read in conjunction with other language contained in the contract. *Id*. at 128-29.

---

[1] The doctrine of merger is a product of English common law and has existed since the time of feudal estates. Under the reasoning *nemo potest esse dominus et tenens* (no man can be both tenant and lord) merger traditionally applied to join two consecutive interests in land when both interests came into the hands of one person. The doctrine primarily operated to simplify real property titles in an era before land was conveyed by written instruments.

*Citizens State Bank of New Castle v. Countrywide Home Loans, Inc.*, 949 N.E.2d 1195, 1197 (Ind. 2011) (citations omitted).

[9]     In finding in favor of Scott on his counterclaim for breach of contract, the trial court issued findings of fact, which read as follows:

> 1.  On February 17, 2012, the parties entered into a written agreement ("Agreement") which provided for the transfer of certain real estate from Scott to Scott and Hemingway.
>
> 2.  On the same date, Scott conveyed the subject real property from himself to Scott and Hemingway as joint tenants with full rights of survivorship.
>
> 3.  The February 17, 2012 Agreement was drafted by Hemingway and is in her handwriting.
>
> 4.  Section 1 of the Agreement provides as follows: "There will not be any cheating by either parties [sic]." The Agreement also provides that [] "[i]f this agreement is broken, then the property will go back to John Scott."
>
> 5.  Hemingway had a child on January 6, 2013. The parties agree that the child is not Scott's child. The child was most probably conceived in April of 2012, only a little more than two months after the execution of the Agreement.
>
> 6.  "Cheating" in the context of a relationship means that one party is intimate with a third party.
>
> 7.  Hemingway cheated by having sexual relations with a third party, which relations resulted in the birth of a child.
>
> 8.  Hemingway has breached the Agreement and, as a result, the property should be conveyed back to [Scott].

Appellant's App. at 6-7. The trial court ordered that Hemingway sign and deliver to Scott a quitclaim deed conveying all of her rights, title, and interest in the Property. *Id*. at 7.

[10] Here, the parties executed the contract just hours before the deed, and that contract was indisputably breached by Hemingway. The contract's specific language that it "be attached to the property deed" indicates the clear intent of the parties that the contract survive the deed.[2] *Id*. at 35. The contractual obligations of fidelity and shared expenses and labor, taken on just hours before the conveyance of the Property, were not obligations whose performance was necessary to the completion of the conveyance. Rather, those obligations were prospective in nature and addressed conduct that would trigger the operation of the remedies clause, specifically here, a reconveyance to Scott. Because the obligations in the contract were not necessary to the conveyance of the Property, they are not merged into the deed. *See Link*, 649 N.E.2d at 128. As such, we find no error in the trial court's conclusion that the contract survived the deed and the doctrine of merger does not apply.

---

[2] Hemingway relies on the fact that the contract was not included with the deed when it was recorded in the county recorder's office and therefore was not an interest of record for purposes of third parties' title searches. However, we emphasize that this action does not involve an innocent third party but rather individuals who were parties to the contract itself and therefore were on notice of its terms.

## Section 2 – The contract is not rendered unenforceable as against public policy prohibiting contracts in consideration of meretricious sexual services.

[11]    Hemingway also contends that the contract is unenforceable based on public policy that prohibits contracts in consideration of meretricious sexual services.[3]

> Indiana courts have long recognized and respected the freedom to contract. We recognize a "very strong presumption of enforceability of contracts that represent the freely bargained agreement of the parties." As a general rule, the law allows persons of full age and competent understanding the utmost liberty of contracting, and their contracts, when entered into freely and voluntarily, are enforced by the courts. It is in the best interest of the public that persons should not be unnecessarily restricted in their freedom of contract. However, in certain circumstances a court may declare an otherwise valid contract unenforceable if it contravenes the public policy of Indiana.

*Ransburg v. Richards*, 770 N.E.2d 393, 395-96 (Ind. Ct. App. 2002) (citations omitted), *trans. denied*.

[12]    Our courts have refused to enforce private agreements on public policy grounds in cases involving: (1) agreements that contravene a statute; (2) agreements that clearly tend to injure the public in some way; or (3) agreements that are otherwise contrary to the declared public policy of Indiana. *Id*. at 396.

---

[3] We note that Hemingway's contention contradicts her testimonial assertions that she was merely Scott's live-in housekeeper, she was not sexually intimate with him, and "cheating" probably referred to a potential lawsuit involving Walmart. The trial court found that the couple was in a romantic relationship and that "cheating" was defined as "one party being intimate with a third party." Appellant's App. at 7. It is on this basis that Hemingway now raises her public policy argument.

Hemingway admits that the contract neither contravenes a statute nor clearly tends to injure the public. Appellant's Br. at 17. Instead, she challenges the contract as "otherwise contrary to declared public policy." *Ransburg*, 770 N.E.2d at 396. As such, we must balance the following factors: (1) the nature of the subject matter of the contract; (2) the strength of the public policy underlying the statute; (3) the likelihood that refusal to enforce the bargain or term will further that policy; (4) how serious or deserved would be the forfeiture suffered by the party attempting to enforce the bargain; and (5) the parties' relative bargaining power and freedom to contract. *Id*.

[13] We disagree with Hemingway's attempts to characterize the contract as an unenforceable agreement requiring forbearance of consensual sexual activity. In nature, this contract is akin to a prenuptial agreement, in which the parties resolve ahead of time their relative rights in property should the relationship dissolve. *See* Ind. Code § 31-11-3-5(a)(1), -(a)(3) (parties to premarital agreement may contract with each other regarding "rights and obligations of each of the parties in any property of either or both of them whenever and wherever acquired or located …. disposition of property upon … legal separation … or … the occurrence or nonoccurrence of any other event."). Here, the parties had previously cohabited and separated, and the contract was executed with the intent that the parties would resume their relationship and conduct themselves as a unit with respect to the Property. While we acknowledge that the record is devoid of any evidence concerning the parties' intent to marry, we note that our courts have ceased to distinguish between

married and unmarried cohabitants when evaluating the parties' rights in situations where an express contract exists or the circumstances support an equitable remedy such as unjust enrichment. *See, e.g.*, *Bright v. Kuehl*, 650 N.E.2d 311, 315 (Ind. Ct. App. 1995) (adopting rule that party who cohabits with another without subsequent marriage is entitled to relief upon a showing of express contract or viable equitable theory); *see also Turner v. Freed*, 792 N.E.2d 947, 950 (Ind. Ct. App. 2003) (holding that cohabitant was entitled to relief by establishing express or implied contract or unjust enrichment even though couple never married).

[14] Hemingway cites as support for her public policy argument Indiana Code Section 34-12-2-1, which abolished certain torts pertaining to sexual activity,[4] and the advent of no-fault divorce. We find her reliance misplaced, as neither tort liability nor marital dissolution is implicated in this case. Even so, we observe that the contract does not require either party to perform sexual services. Nor does it require either party to abstain from all sexual activity. Rather, it simply lists cheating by either party as one of the acts constituting breach.

[15] As for the remaining factors, we believe that the forfeiture suffered by Scott, were the contract not enforced, would be serious and grievous. The record shows that the Property had been his parents' home, which he inherited at his

---

[4] *See* Ind. Code § 34-12-2-1 (abolishing torts of alienation of affections, criminal conversation, and seduction of any female person of at least eighteen years of age as well as action for breach of promise to marry).

father's death. By way of contrast, Hemingway wasted little time in breaching the contract, has shown no interest in contributing to the Property since moving out, and now seeks half of the Property through partition. Moreover, nothing in the record indicates any substantial disparity in the parties' relative bargaining power or freedom to contract.

[16] Finally, we note that Hemingway's public policy argument applies only to the no-cheating provision of the contract. Nevertheless, she admits that she ceased contributing to the expenses pertaining to the ownership of the Property as of June 2013. As such, she breached a separate provision of the contract and is subject to the remedies clause contained therein, which requires her reconveyance of her interest in the Property to Scott by quitclaim deed. *See Lee v. State*, 816 N.E.2d 35, 39 (Ind. 2004) (mere fact that contract contains objectionable provision does not prevent enforcement of other provisions that are severable). We find no error in the trial court's order. Accordingly, we affirm.

[17] Affirmed.

Riley, J., and Altice, J., concur.